## AARON BRIAN *vs.* THOMAS J. DAVIDSON.

Judgments rendered by justices of the peace come within the evil designed to be remedied by the act of 1844 requiring the enrolment of judgments.

Justices' courts are courts of record in contemplation of the statute, and judgments rendered therein bear equal dignity with judgments rendered in the circuit court.

A constable is prohibited by statute from levying an execution on a negro slave, unless there is no other personal property sufficient to satisfy the debt. Hutch. Code, 701.

Where the defendant desires to exempt his slave from execution, he should point out other property.

If the return of the constable shows that he could find no other property, and a third party claims the slave levied on, he can only have relief in a court of equity.

If the return of the constable did not show that the defendant had no other property to be found, a court of law might relieve.

In error from the circuit court of Tippah county; Hon. Hugh R. Miller, judge.

Thomas J. Davidson, the appellee, recovered three judgments against John H. Brian, before a justice's court in Tippah county, for the following amounts: $32.90, $10.76, and $33.82, upon which judgment executions were issued in due time; and on the 4th of December, 1850, they were levied on a negro girl, named Rosa, as the property of said John H. Brian. But Aaron Brian came forward and made affidavit, that the said negro slave was his property, and gave bond to try the right of property before a justice of the peace. The trial was had before a jury in the justice's court, on the 23d of August, 1851, when the jury found for the plaintiff in the executions. The defendant, Aaron Brian, then appealed to the circuit court, where the three cases were by agreement consolidated into one.

The case was afterwards tried in the circuit court of Tippah, at the September term, 1851, when the jury gave a verdict for the plaintiff in the executions, subjecting the negro to the satisfaction of the judgments. The claimant moved for a new trial, which was refused by the court, and he then prayed for a writ of error to this court.

*Price* and *Jackson*, for appellant.

We insist that that act of 1844 applies to justice's judgments as well as other judgments. The first section of the act says, "the clerks of the circuit courts of the several counties in this State shall each procure and keep in their several offices, as a part of the records thereof, one or more well bound books," &c., "and the name or names of each and every defendant to any judgment or judgments, decree or decrees, of any superior, circuit, or district, or inferior court of law or equity, holden within this State, provided the same be a court of record," &c., shall be entered, &c.

The statute of 1844 directs, that such judgments, &c., shall be enrolled, and that the books upon which they are so enrolled shall be styled the "judgment roll" of said court. The second section provides, that the judgments, &c., rendered in any county, in this State, may be enrolled upon an abstract thereof. The sixth section of the same act makes all judgments a lien from the date of enrolment. This act clearly contemplates

that all judgments of any court whatever shall, from the date of enrolment, be liens, and clearly repeals all previous laws in relation to liens of any judgments whatever, provided the judgment be of a court of record.

This court has decided that a justice's court is not a common law court. 10 S. & M. 154. No other court in this State is a common law court. The high court of errors and appeals, the circuit courts, and all other courts within this State, are courts under the constitution and statute laws of the State. But the circuit and justices' courts have alike common law jurisdiction; and we deem a justice's court as clearly a court of record as any other court within this State.

Tomlin's Law Dictionary, as well as Blackstone, define a court of record in England to be one whose jurisdiction is more than forty shillings; another definition is, that a court of record is a court with power to fine and imprison. Our constitution makes the jurisdiction of a justice of the peace extend to sums of fifty dollars, — greatly over forty shillings, — and our statute gives him the power to fine and imprison. Hutch. Code, 689.

Besides, each justice of the peace is required by law to keep a regular docket of his proceedings, to make regular entries of each suit *brought,* and of each judgment given, as also to note the date of each warrant or execution when issued; and he shall make entries of all process returned to him, and the manner of such return. He is also required to keep a docket of all criminal proceedings had before him. Hutch. Code, 691, 699.

We conclude, then, that a justice's court is the inferior court of law alluded to in the statute above referred to. The district courts, referred to in the first section of the act, can only mean the district chancery courts as contradistinguished from circuit courts. They are inferior courts of equity, but not inferior courts of law. We have no other inferior courts of law under the laws of this State, than the justice's courts. We also consider, that the justice of the peace is the clerk of his own court; that the law establishing that court imposes upon him the same duties in relation to his own court as are devolved upon the clerk in relation to the circuit court;

and that the justice's court is as fully a court of record as any other court in this State, so far as he is required to make a record of his proceedings.

It is just as easy to get an abstract from a justice's court, and have the same filed in the clerk's office of the circuit court, and the judgment enrolled thereon, and its lien established, as it is the abstract of any other judgment not rendered by the court upon whose roll it is entered; or as it is the abstract from any other circuit, chancery, or district court, out of the county in which the judgment is enrolled; and no rule of reasoning can be brought which does not make the sixth section of the enrolment act apply to judgments of a justice of the peace, and that does not make this section repeal the act of 1830, which made judgments of a justice of the peace liens, and of the same dignity with the judgments of the circuit courts, as also the act of 1824, which made judgments of the circuit court liens from the date of their rendition. If this be the correct view of the effect and meaning of the statute referred to, the charges given by the court, that judgments of a justice of the peace without enrolment were liens, were erroneous. Indeed, the act of 1844 was intended to establish a policy in this State, and to destroy all conflict as to the right of property on the subject of liens, and to make no judgment a lien unless it was enrolled.

It was not lawful to levy the executions upon the negro slave unless there was no other personal property upon which to make a levy. It is in proof there was sufficient other personal property to levy on. Hutch. Code, 701.

*O. Davis*, for appellee.

The point mainly relied on by appellant's counsel in their brief is, that the court erred in instructing the jury that a justice's judgment is a lien without enrolment.

The act regulating judgment liens, (Hutch. Code, 890, art. 14,) as its whole import and all its provisions show, was only intended to apply to judgments of the circuit court. See also, p. 894, art. 18.

The act of 1844, (Hutch. Code, 891, art. 16,) is only intended

as its title shows, as an amendment of the above. It is true it in terms embraces all judgments, provided the same are from a court of record.

A justice's court has never been regarded in this State as a court of record, in the technical meaning of that word. It has no clerk, no time for holding it prescribed by law, no appeal from it to the high court, no form of pleadings required in it, no final record of its proceedings, nor any official seal provided for the authentication of its proceedings. It is required only to keep a book, which is in fact only a docket of its judgments. In appeals from it, the original evidence of debt has to be sent to the higher court. It has, in fact, none of the attributes which attach to a court of record, either in the sense conveyed to the common understanding by those words, or in their more technical sense.

By inserting the proviso as to courts of record in the act of 1844, the legislature surely meant to limit the provisions of the act to a part of the courts of the State, and to exclude other courts from its operation.. If justices' courts are to be regarded as embraced in it, then the proviso was unnecessary, because all the courts of the State are courts of record, if justices' courts are to be so regarded. What other courts could the proviso apply to, if not to a justice's court?

*T. J. Word*, on the same side.

The question raised by this record in this case is, whether the judgment of a justice of the peace has a lien on the property of the defendant, so as to subject property in the hands of a third party, purchased after the date of the judgment. That such judgments had a lien, is declared by the act of 1830. See Hutch. Code, 601, § 13. And this is admitted by the opposing counsel; but they insist, that the acts of 1841, 1844, and 1846 abolished this lien, unless the judgments are enrolled as required by these acts. The first of these acts, (Hutch. Code, 890, § 14,) could not affect the justice's judgments, for they only had a lien on the property of the defendant in the county where rendered; and this act confines the lien of circuit court judgments to the county in which they are rendered, unless

upon certain conditions provided in the act. The second of these acts, (Hutch. Code, 891, § 16,) applies by its terms to the courts of record of this State, and I presume that a justice's court is not a court of record. As no decision of this court has fallen under my observation, declaring a justice's court to be one of record, I suppose it would be safest to follow analogy. The laws of Alabama are very much like ours as to justice's courts. And in 13 S. & M. 635, *Scott* v. *Loomis*, the court refer approvingly to a decision of Alabama, declaring justices' courts in that State not courts of record.

I think, too, that the legislature had in view the fact, that justices' courts are not courts of record. The first section of the act last quoted, declares, that the clerks of the circuit court shall procure and keep as part of their record books for the enrolment of judgments or decrees of any "superior, circuit, district, or inferior court of law or equity, holden within this State, provided the same is a court of record." I apprehend that no fair construction of this section could embrace a justice's court. I suppose the district or inferior courts here referred to, mean district chancery courts, criminal courts, or such inferior courts of record, as the legislature, under the constitution, have or may establish. I cannot well comprehend how a court, in which no pleadings are required, can be deemed a court of record; and unless it shall be determined by this court, that a justice's court is included in the provisions of this act, the lien created by the act of 1830, first referred to, still exists. It is certainly not directly and in terms repealed, and I submit, that it is not done by implication and inference.

*J. F. Cushman*, for the appellant, in reply,

Contended, that the law commonly called the "judgment roll" act of 1844, applies to judgments rendered in justices' courts, otherwise the wording would not have been so precise and its application so general as to include "any judgment or judgments, decree or decrees of any superior, circuit, or district or inferior court of law or equity, holden within the State, provided the same be a court of record," &c. If the act had not been intended to apply to justices' courts, those who

passed it would, I think, have excluded that court from its general provisions. The reason for passing that act applies equally to justices' courts with other courts, and the evils to be remedied were found to exist, at the time of its passage, in that court as well as others. This the legislature knew.

But it is contended by counsel, that justices' courts have no clerk, no time prescribed for sitting, no form of pleading, no final record, nor any official seal. All these may be wanting, and still it may be a court of record. It is competent for a justice of the peace to act as his own clerk, or why is he commanded by the State, in all cases of appeals taken from his decisions to the circuit court, to send up a " transcript of the record," &c. Hutch. Code, 694. Surely the legislature would not have commanded a justice to send up a transcript of a record, unless he had a record, and if he has record it is very clear that his is a " court of record." Again the statute says, that when a justice of the peace shall resign, &c., he shall transfer, &c., the books, records, papers, &c. Ib. § 28. If his is not a court of record, why does the statute require him to keep records ? The legislature might abolish all forms of pleadings in the circuit court, and the necessity of making up a final record might be dispensed with in that court as well as an official seal, still the court might prescribe its own times for sitting ; and yet, I apprehend, it would still be a court of record. None of these are necessary requisites of a court of record.

Mr. Justice YERGER delivered the opinion of the court.

The principal question presented by this record is, whether the act of 24th of February, 1844, (Hutch. Code, 891,) commonly called the " enrolment law," applies to judgments rendered by justices of the peace.

By the act of 15th of December, 1830, (Hutch. Code, 701,) it is declared that all judgments obtained in, and executions issued from any justice's court, shall bear equal dignity with judgments and executions of a circuit court, and shall bind the property of the defendant from the date of the judgment.

The " enrolment law " made it the duty of the clerk of the circuit court to enter upon the "judgment roll" on the applica-

tion of the party all judgments and decrees of all courts of law and equity in the State, provided the same is a court of record; and the eighth section provided, that the lien of the judgments should only extend from the day of the enrolment.

We have no doubt that judgments rendered by justices of the peace come within the mischief designed to be remedied by the act of 1844; and unless expressly or by necessary implication excluded, the act should be made to apply to them. It is said in answer to this view, that the act in terms only applies to the judgments of courts of record, and that justices' courts are not courts of record, and, therefore, not embraced in the act. If the judgments of justices of the peace are not the judgments of courts of record, there would be much force in this argument.

But, we think, under the constitution and laws of this State, that the courts held by justices of the peace for the trial of civil suits, though inferior and limited, are yet courts of record. In the first place, the act of 15th of December, 1830, declares, that the judgments and executions of justices' courts shall bear equal dignity with the judgments and executions of a circuit court. In the second place, by the same act, it is made the duty of every justice of the peace, to "keep a fair and legible book of entry of all civil proceedings had before him for the recovery of debts;" which book, on his resignation or removal, is to be delivered to his successor, or deposited with the clerk of the probate court. Again, appeals to the circuit court are tried on "transcripts of the records" of the justices' courts. Hutch. Code, 694, *et seq.*

It will be seen from these provisions of the statutes, that the courts held by justices of the peace for the trial of civil business, possess every necessary quality of a court of record, which is nothing more than a court, "whose judgments, and all the previous proceedings thereto, are carefully registered and preserved under the name of records, in public repositories set apart for that particular purpose." Black. Com. Int.

Secondly. The contest in this case is in relation to a slave levied on by virtue of sundry executions issued by a justice of the peace. The executions were against John H. Brian, and

the contest is between the plaintiff in error, who claims the property by purchase from John H. Brian, and the judgment creditor.

It was contended in the court below, that the slave was not subject to execution, because the defendant had other property on which the execution could have been levied. The words of the statute are, that "no constable shall be authorized to levy on any negro, unless there is no other personal estate sufficient to satisfy the debt," &c. Hutch. Code, 701. Under this act, we think, the officer is justifiable in levying on a slave, if he cannot find other personal property of the defendant. If the defendant wish to exempt his slave he should point out other property. Where a third party claims the slave by virtue of a purchase from the judgment debtor, if the return of the constable shows that he could not find other property, he can only have relief in a court of equity, which on a bill stating the facts, and showing the other property subject to the execution, would compel the judgment debtor to resort to that property. This application should be made before a sale under the execution, or otherwise the purchaser would get a good title to the property sold. If the return of the constable did not show that the defendant had no other property to be found, a court of law might relieve.

Judgment reversed, and cause remanded.