Cason *v.* Cason.

## John A. Cason, Executor, &c., *v.* James Cason.

1. STATUTES: CONSTRUCTION OF.—In construing a statute, the word "shall" will be interpreted in the sense of "may," if the spirit and intention of the act require it.

2. JURISDICTION: COURTS OF SPECIAL JURISDICTION: RULES IN RELATION TO.—With respect to courts of special jurisdiction, the rule is, that all necessary jurisdictional facts must be shown by the record, in order to sustain the jurisdiction; but this rule applies only to questions of jurisdiction, as to the *subject-matter*, and not to the *person;* for wherever the jurisdiction has once vested, as to the subject-matter, the rules which govern its exercise, as to the person, with respect to evidence, process, &c., are generally the same as those applicable to courts of general jurisdiction.

3. JUDGMENT: PRESUMPTION IN FAVOR OF.—The judgment of every court, on a subject-matter within its jurisdiction, is presumed to be correct, and to be based on sufficient evidence, in all cases where the evidence is not required by law to be made a part of record.

4. EXECUTOR AND ADMINISTRATOR: FINAL SETTLEMENT: AFFIDAVIT OF NON-RESIDENCE.—The affidavit of an executor or administrator, stating the non-residence of a distributee, provided for by the 13th section of the Act of 1846, (Hutch. Dig. 682,) is not essential to the validity of the order of the Probate Court, awarding publication of citation against such non-resident; and is not required to be in writing, or to be recorded; such affidavit is only a species of evidence *in pais*, which that act authorizes for the consideration of the court, in determining the fact of non-residence; and the court may act upon any other satisfactory proof of non-residence, without requiring the affidavit of the administrator or executor.

5. PROBATE COURT: PRACTICE IN RELATION TO FINAL SETTLEMENT.—It is not essential that the order of the Probate Court, awarding publication of citation to non-resident distributees, at the instance of the administrator or executor applying for an allowance of his final account, should specify the *names* of such non-residents, *provided,* that the citation which is issued and published, is directed to them by their proper names.

6. PROBATE COURT: JUDGMENT OF, PRESUMED CORRECT, AND NOT IMPEACHABLE BY PAROL EVIDENCE.—In a proceeding instituted in the Probate Court, by a distributee against an executor or administrator, to set aside and annul a final settlement, made by the latter, it is incompetent to show, by parol proof, that the requisite evidence was not before the court to justify it in awarding publication of citation against the distributee, as a non-resident. The matter being within the jurisdiction of the Probate Court, its judgment is presumed to be correct, and founded on sufficient evidence, and cannot be attacked in a collateral proceeding. See 1 How. 173; Ib. 450; 28 Miss. R. 409.

7. EXECUTOR AND ADMINISTRATOR: FINAL SETTLEMENT: HOW MINORS ARE BOUND BY.—The statute, (Hutch. Dig. 682, § 12,) requires, that when an executor or ad-

Cason *v.* Cason.

ministrator applies for an allowance of his final account, if any one of the distributees be a minor, and a non-resident, publication of citation, as to him, shall be directed to his guardian by name and character; and if he have no guardian, the court shall appoint a guardian *ad litem*, residing within the jurisdiction of this court, who shall be cited. A final settlement, therefore, will be void, as to a non-resident distributee, who is a minor, if the citation published be addressed to him by name, and not to his guardian; and if he have no guardian, it is essential that a guardian *ad litem* be appointed and cited.

8. EXECUTOR AND ADMINISTRATOR: INTEREST DUE BY: HOW CALCULATED.—Where an administrator is by law chargeable with interest, and he has made disbursements on account of the estate, the interest should be calculated in the same mode as on contracts for the payment of money, where partial payments have been made, viz: the disbursements should be credited first on the interest due by the administrator at the time they were made, and the surplus, if any, to the principal.

9. SAME: WHEN LIABLE FOR INTEREST.—If an administrator unnecessarily loan the notes or bonds of his intestate, he will be liable for interest at the legal rate at the time the loan was made, notwithstanding the rate of interest was afterwards, and before final settlement, reduced.

10. SAME.—If an administrator render no account of money received by him, as a part of the assets of the estate, and there be no necessity for his retaining it, he will be liable for interest on the amount so received and retained.

11. SAME: WHEN LIABLE FOR DEBTS NOT COLLECTED.—A loan by an administrator, without authority of law, of notes or bonds belonging to the estate, will render him liable for the amount thereof, although the makers or obligors become insolvent, unless he show, that by the use of the greatest diligence, the money could not have been collected or secured by any legal means.

APPEAL from the Probate Court of Yazoo county. Hon. R. B. Mayes, judge.

John Cason, after having made and published his last will and testament, died in the year 1836. Canada Cason, his executor, in October 1836, procured the same to be probated, and recorded in the Probate Court of Yazoo county, and qualified as executor. The will of John Cason, after making several specific bequests, devised and bequeathed all the residue of his estate of whatever kind, to the executor in trust, for John White, Hilary White, James Cason, (the appellee,) and John T. Cason and Alexander Cason, in equal portions; and it provided that in case either of them should die before arriving at the age of twenty-one years without lawful issue, his share should go to the survivors in equal portions. John White, died, after attaining his majority; and

Alexander Cason, died, on the 3d of September, A. D. 1853, while he was a minor.

Canada Cason, returned an inventory of the personal property, which he afterwards sold under the order of the court. The sale amounted to $12,107 75; as shown by the report, though by an error in the addition, the aggregate amount is stated in the report to be one thousand dollars less. The executor made annual settlements in 1839, 1840, 1844, 1845, and 1847, and afterwards died without having made any final settlement, or having made distribution of the estate. By his last will and testament the appellant, John A. Cason, was appointed his executor, who as such, made a final settlement of the administrator of Canada Cason, in May, A. D. 1850.

On the 31st day of January, A. D. 1853, the appellee, James Cason, in his own right, and as survivor of said Alexander Cason, filed his petition in the Probate Court of Yazoo county, in which he alleged in substance the foregoing facts; and further, that the said pretended final settlement was void as to him and the said Alexander Cason, because no citation was personally served on them; and further, that they were at that time residents of the State of Louisiana, and that no legal publication of notice of said final settlement was made; that the said John A. Cason, did not make or file in said court an affidavit of their non-residence before procuring the order for publication; and that the said publication was *ordered* by the court against the "heirs of Canada Cason," without specifying their names, and that the said Alexander being then a minor, and having no guardian, the court failed to appoint a guardian *ad litem* for him, and to have the said guardian cited. The petition also charged that the said final account, and the annual accounts were erroneous, and specified the errors complained of; and prayed that the said final account be annulled, and the account reviewed and corrected.

The defendant below first pleaded in bar of the proceeding, the final settlement made in 1850. The plea being set down for hearing was overruled, and he then answered, denying the existence of the errors complained of, and relying upon the said final settlement as a bar to the relief claimed by petition. The court re-

opened and annulled the final settlement both as to James Cason in his own right, and as survivor of Alexander Cason.

The accounts were referred to a commissioner, to re-state the account of the executor, under the instructions of the court. Upon the coming in of this report, the petitioner objected to it, because the commissioner in making the calculation of interest had charged the executor interest on the sums received up to the date of making his report, and had allowed him interest on his disbursements from the date they were made, up to the same time. The court sustained the exception, and ordered the commissioner to calculate the interest in the mode prescribed in the statute, where partial payments are made on contracts—crediting the disbursements first on the interest due by the executor at the time they were made, and the surplus on the principal.

The exceptions filed by the defendants below necessary to be here noticed, are First. That the executor was charged with eight per cent. interest. Second. That the commissioner had charged the executor with the balance uncollected on two notes due by Pease and Hienlin, to the estate, and, Third: That he had disallowed a credit for $68, paid by the executor to one Gorman. All these exceptions were overruled by the court.

So far as the question in relation to the validity of the final settlement, made in 1850, is concerned, the facts are: that at that time James Cason and Alexander Cason, were both non-residents of this State, living in Louisiana; that Alexander was a minor, and had no guardian; and that neither were personally served with notice. In February, A. D. 1850, the appellant filed his petition in the court below, asking permission to make a final settlement, and stating "that some of the heirs were non-residents, and praying for a publication of citation as to them. The record shows that thereupon publication for the time prescribed by law was ordered against the " heirs of John Cason;" and at the May term, 1850, the final account was examined and allowed, the citations to the heirs having been returned, executed, and due proof of publication being made as to the non-residents. There was no affidavit of the executor or of any other person, on file, stating the non-residence of any of the legatees or heirs, nor was there any

recital in the record that such affidavit was ever made or filed. The publication was directed to James Cason, Alexander Cason, and others by name, as "heirs and distributees of John Cason." No guardian *ad litem* was appointed for Alexander. The oral testimony introduced by petitioner to show that in fact no affidavit of non-residence was made by the executor, is fully set out in the opinion of the court, as well as the evidence in relation to the other exceptions of the appellant, to the commissioner's report.

The Probate Court made a final decree confirming the commissioner's report as amended, and ordering the executor to pay James, the sum that was found due to him, as an original legatee, and also his share of the assets found due on account of Alexander Cason; and the executor, John A. Cason, appealed.

*Jones* and *Bowman*, and *Edward Bowman*, for appellant.

The final account and settlement should not have been re-opened or annulled as to complainant in his own capacity. First. From lapse of time; five years having intervened between said final settlement and filing complainant's bill. Hutch. Code, 728, § 3. Second. Because final settlements of executors, administrators, and guardians, are conclusive (after the lapse of two years) as to all the world, unless the order of affirmance be reversed by some competent authority. *Gildart* v. *Stark*, 1 How. (Miss.) R. 454; *Griffiths, adm'r,* v. *Vertner and wife*, 5 How. 783; *Smith* v. *Heard*, 7 Ib. 188; *Hendricks* v. *Huddleston*, 5 S. & M. 427.

Such settlements are final and conclusive, except for fraud, after the lapse of two years from the term at which they are made. *Stubblefield* v. *M'Raven*, 5 S. & M. 142; *Harper* v. *Archer*, 9 Ib. 74; *Stewart* v. *Davidson*, 10 Ib. 351; *Hooker* v. *Hooker*, Ib. 599; *Pendleton* v. *Prestridge*, 13 Ib. 302; *Austin* v. *Lamar*, 23 Miss. R. 190; *Voorhees* v. *United States Bank*, 10 Peters, U. S. R. 471, 472.

The record is conclusive proof of the judgment and decision of the court, and cannot be contradicted; 1 Phil. Ev. 317; 3 Ib. 799, note 550, and authorities there cited; except for want of jurisdiction. 3 Phil. Ev. 799, note 551; *Voorhees* v. *Bank United States*, 10 Peters, R. 471, 472; *Gregnor's Lessee* v. *Astor et al.*, 2 How. (U. S.) R. 319; *Hardy* v. *Gholson*, 26 Miss. R. 70.

The main point raised and relied upon by the appellee, in the court below, (and which will doubtless be strenuously insisted upon here) was, that the Probate Court is a court of limited and special jurisdiction; and as such, the record must show affirmatively that all preliminary steps—all the requisites prescribed by the statute—have been taken, to maintain the jurisdiction of the court; and upon this mistaken view of the case, it was decided below. But this question is well and clearly settled by the early decisions of this court. *Blanton* v. *King et al.*, 2 How. (Miss.) R. 856; *Carmichael et al.* v. *Browder*, 3 Ib. 255, and more recently in the case of *Jones et ux.* v. *Irving's executors, &c.*, 23 Miss. R. 364. Also, *Gregnor's Lessee* v. *Astor et al.*, 2 How. (U. S.) R. 341, and authorities referred to in that case.

The statute (Hutch. Code, 682, § 12,) requiring in case of nonresident legatees, distributees and wards, an affidavit of the fact from the executor, administrator or guardian, in cases of final settlement, does not require the affidavit to be made a part of the record, nor does it prescribe any particular mode or form for making it; it may be reduced to writing, or it may be by simple oral affirmation.

As the affidavit is only intended for the information of the court, it is enough for the record to show, in general terms, that the law has been complied with. The record cannot be contradicted except for fraud. *Gregnor's Lessee* v. *Astor et al.*, 2 How. (U. S.) R. 338 *et seq.*

There is, also, manifest error in the principle laid down by the court, for stating the account by the commissioner. Disbursements by an executor or administrator, should never be deducted from the interest arising from assets received by him, and remaining over in his hands, but from the principal. 2 Lomax, Ex. 346.

The court erred in confirming the commissioner's report, which charges the appellant eight per cent. interest on the whole amount of the account of sales, as well as receipts, from 2d of January, 1838, to the time of stating the account. Hutch. Code, 643, art. 6, § 2; 2 Lomax, Exor. 344.

The appellant should have been credited, in the account by the commissioner, with the sum of $65 paid Gorman, as Wm. J. Russell

proves, the executor lived at a great distance, and the testator's property was in such condition, at his death, as to require immediate attention.

The appellant should also have been credited with the sum of $———, balance due on judgment against James H. Hunter and John R. Pease; as William G. Russell and Burton Yandell prove that Pease was reputed solvent and good for the amount of Hunter's purchase at the time of the sale.

The Probate Court had also taken Pease as security on the executor's official bond but a few months previously, as is shown by the record.

It was likewise erroneous to charge the appellant with interest on the sum of $1285 28, from 21st November, 1836, (the time of its receipt, and but a few months from the time of granting letters testamentary) up to the time of stating the account.

For these reasons, and the errors set forth, the judgment should be reversed, and the cause remanded with proper directions to the court below.

*R. S. Holt*, for appellee,

Filed an elaborate argument, but it is not deemed necessary to report more than refers to the validity of final settlement, and the question of interest.

I. Whatever may have been the legal validity and effect of the final settlement set up in the answer, it is obvious that it did not bar the rights of Alexander Cason.

1. The petition alleges, and the answer admits, that he was a minor when that settlement was made, and when he died.  The limitation of two years upon bills of review therefore never commenced running against him.

2. The suit was commenced within less than two years from his death, and complainant being, under the will, by his death, invested with his rights, took them in the same condition in which they then existed; and as to those rights, the statute only commenced running from that time.

3. This final settlement, and the order of the Probate Court allowing it, were, as we think, not only void on the general grounds

hereafter stated, as to the complainants, but were void as to Alexander Cason, on the special ground that he was a minor without a guardian, and no guardian *ad litem* was appointed to represent him. The proof that no such order was made, is in the bill of exceptions.

The Act of 1846, (Hutch. Code, 682,) declares in explicit terms, that no order or decree of the Probate Court shall *have any validity* as against a minor, unless made upon citation served on his guardian, if he has one, and if he has none, then upon a guardian *ad litem*, appointed by the court to represent such minor.

The right of Alexander Cason, at his death, to maintain a bill of review, and for a final settlement, and for a decree for the amount due him, being wholly unembarrassed, could not have been extinguished by his death, and must have vested in those who, under the will, succeeded to his share of the estate.

II. As to the direction given in the first decree for stating the interest account against the defendant.

The rule prescribed is, that the defendant shall be charged with interest on all money received by Canada Cason, as executor, and not necessarily retained by him for the payment of debts, from the period of *six months* after its reception. This rule is certainly sufficiently liberal to an executor, and has the sanction of Chancellor Kent, and other high authorities. 1 John. Ch. R. 507; 2 Wend. R. 85, 86, 87; 2 Lomax, 346; 8 S. & M. 682, 689.

III. The decree declaring the final settlement in the Probate Court void, is assigned as error by appellant.

1. If an order or decree of the Probate Court is void, that court has full power so to declare, and to treat it as a nullity. 12 S. & M. 650; 14 Ib. 204.

2. We insist that the final settlement, and the order of court allowing it, were void as against the complainant, because he was not before the court, and the court had no jurisdiction over him by any actual, or any legally sufficient constructive notice. Complainant was a non-resident of the State, and was not cited to appear in fact, as the proofs in the bill of exceptions show.

The same proof shows that the only constructive notice which he had, was by a newspaper publication made by order of the Pro-

bate Court; and that this order was made without any affidavit having previously been made by the executor of the non-residence of complainant, as required by the Act of 1846. Hutch. Code, 682.

The language of the statute is :—"And whenever any such legatees, heirs, distributees, or ward, shall be non-residents of this State, or reside beyond the jurisdiction of the court, so that the process thereof cannot be served on them, the said executor, administrator, or guardian, shall make affidavit of the fact, and the said *Probate Court shall thereupon* cause publication to be made in some newspaper in this State," &c.

Upon the construction of this statute, and its operation in this case, we insist :—

1. That as it is in derogation of the common law in substituting constructive for actual notice, its effect is not to be extended *by construction* beyond the plain import of *its language.* 2 Meigs, Dig. 784.

2. By the plain language of this act the *making of the affidavit* is a *condition precedent* to the investiture of the Probate Court, with the *power* to make an order of publication. 27 Miss. R. 133. The power to make the order is not general in all cases where the party is a non-resident, nor, upon the court being satisfied that he is such, but the making of the affidavit, the performance of *the antecedent act,* is required, and the court is "thereupon" directed and *empowered* to make the order.

If such language occurred in an ordinary letter of attorney, no one, I think, would doubt that the power was conferred on a condition, or that the condition must be performed before the power vested ; jurisdiction in a court is but power—the power to perform a judicial act—and if conferred upon condition, the court cannot dispense with the condition, or substitute something else in its stead, any more than can an ordinary agent, whose investiture with power is made to depend upon a condition precedent. 8 Cowen, R. 370.

3. That the affidavit was not made in this case is, we think, abundantly established by the proof contained in the bill of exceptions. But,

4. We insist that it is necessary to the validity of the order of publication, that the fact of the affidavit having been made, *the*

*jurisdictional fact* should appear *upon the record.* Certainly the jurisdiction of a court must be proven by the party asserting the validity of its decrees or orders; and this can only be done by proving the fact on which the jurisdiction depends. The presumption of law is *against* the jurisdiction of the Probate Court, and every other court of special and limited jurisdiction; and the fact or facts on which its jurisdiction is dependent, must be affirmatively shown, and shown by the record, or the act of such a court is extrajudicial and void. 1 How. R. 439, 440; 6 Ib. 234, 235; 1 S. & M. 368; 7 Ib. 454; 9 Ib. 622; 26 Miss. R. 141; S. & M. Ch. R. 562; 11 Wend. R. 648, 659, 652-654; 8 Cowen, R. 370; 8 Port. (Ala.) R. 99, 104; 4 Dallas, R. 8-11; 3 Ib. 382, 383; 9 Wheat. R. 548, 549.

The evidence contained in the bill of exceptions proves, in our opinion, as before remarked, that the affidavit was not made in fact—it certainly proves beyond dispute, that it does not appear from the records of the Probate Court, to have been made.

It is true that the order of that court, allowing the final account, recites that due proof was made of the *publication of notice, &c.* But this is a totally different fact. The publication of the notice was doubtless *duly proven*, but the fact that an *affidavit was made*, before the court at a previous term ordered the publication, is a totally different fact, and is not alluded to in this recital.

4. We insist that this order of publication is fatally defective on another ground.

It is manifest that the statute designed that the Probate Court should be informed of two facts before making the order. First. Who the heirs, legatees, &c. to be notified were, and Second: That they were non-residents. Now, an examination of the order will show, that they are not named in it, nor even designated according to their true characters, as *legatees;* but that the order is, in general terms, that publication be made of the citation to non-resident *heirs.* The publication is not only thus directed to be made to them by a description or designation not applicable to them, but the office and duty of determining who were the heirs or legatees is, by the order, devolved on the clerk—an officer to whom the law had never intrusted such powers. If such non-residents

can be thus notified by general description, as a class, the notice in this case was not sufficient, because the order only directs notice to be given to the *heirs*, to which class complainant did not belong. If such parties can only be properly cited by name, then we insist that they must be designated by name in the order of the court; and not merely in the publication made by the clerk or some one else who may prepare it.

On these various grounds we think the very astute and able judge, who presided in the Probate Court, rightly held the order of publication and all subsequent proceedings founded on it *void*, for want of jurisdiction in the court.

IV. The decision of the court, sustaining the exception of the complainant to the account first stated by the commissioner, is complained of. A simple statement of the point of controversy will be sufficient to vindicate the decision of the court. The commissioner, in making up his interest account, computed interest on each item on both sides of the account, but did not compute interest on interest. The result was, that however large the amount of interest due by the executor, might at any time be, each payment or disbursement made by him was credited on the principal sum due, and went to reduce the debt on which the interest was accruing.

We insisted, by this exception, that each payment or disbursement, made by the executor, should first be credited on the interest then due, and the balance only, if any, applied as a credit on the principal debt. The court held this to be the true mode of stating the interest account, and sustained the exception. This decision follows the analogy furnished by the statute in relation to computing interest in other cases of partial payments, and conforms to a rule of equity jurisprudence older than the statute. 2 Johns. Ch. R. 212, 213; 2 Wend. R. 85, 86, 87.

HANDY, J., delivered the opinion of the court.

This was a petition filed in the Probate Court of Yazoo county, by the appellee, for the purpose of setting aside a final settlement of the appellant, as executor of Canada Cason, in that court, and for a new account.

The material facts necessary to be stated appear to be, that John Cason, died in the year 1836, leaving a will, which was probated by his executor, Canada Cason, by which he bequeathes the greater part of his property to his executor, in trust for John White, Hilary White, James Cason, the appellee, John T. Cason, and Alexander Cason, equally; and in case of the death of either of these legatees before arriving at the age of twenty-one years, without issue, the share of such legatee to be equally divided among the others. Alexander Cason died in his minority, and his share vested in the survivors. The executor returned an inventory, and made and reported a sale of the personal property, and after having made several annual settlements with the Probate Court, he died without having made a final settlement of the estate. The petition alleges that these settlements contain errors, which are prayed to be corrected; and it states that at May term, 1850, the appellant, as executor of Canada Cason, rendered to the Probate Court, an account of the final settlement of John Cason's estate, which was allowed and approved by order of that court. This account is alleged to be erroneous in many particulars which are specified, and the account and the order confirming and allowing it, are also alleged to be void; because they were made without such notice, either actual or constructive, as was required by law to be given to the petitioner, or to Alexander Cason, the deceased legatee, in right of whom the petitioner claimed an interest in the estate as well as in his own individual right. The ground of this objection is stated to be, that at the time at which the account was rendered and allowed, the petitioner, and Alexander Cason, were residents of the State of Louisiana, the latter being a minor and having no guardian; that no citation was personally served on either of them, and that the publication in a newspaper, which was ordered by the court, for the purpose of giving them legal notice, was ordered *without any affidavit being first made by the executor,* showing their non-residence; and, as to Alexander, that he was a minor at the time, without a guardian, and no guardian *ad litem* was appointed for him by the court.

The appellant, after an unsuccessful plea to the petition, answered and denied the alleged errors in the annual accounts, and

relied on his final account, made and allowed in May, 1850, as a bar to the petition, and insisted on the validity of the account, and of the order of court in allowing it.

Upon the last hearing of the cause, the court held the final settlement and the order allowing it, to be void, for want of jurisdiction in the Probate Court, and directed a new account to be taken, ascertaining the amount due the petitioner in his own right, and as survivor of Alexander Cason, and appointed a commissioner to take and report such account. This account was made and reported, and several exceptions were taken to it by the appellant, which were overruled, and an exception on the part of the appellee was sustained.

The second report made was not excepted to; and for the sum therein stated to be due the petitioner, as an original legatee, as well as that stated to be due him, as survivor of Alexander Cason, the court decreed in favor of the petitioner; and from that decree this appeal is taken.

The first and most important question to be considered is, whether the order of publication, made by the Probate Court, is void, as to James Cason, under the state of facts appearing by the record; for if that order was void, the publication made under it cannot have the effect of notice in law to him, and consequently the order allowing the final settlement, would be void, for want of jurisdiction of the person.

The facts touching this point, as they appear in the record, are as follows:—The appellant filed his application in writing, to the Probate Court, at February term, 1850, for leave to make his final settlement, and praying for " an order of publication, as provided for by law, upon the distributees of the estate of John Cason, deceased, some of whom are non-residents of the State of Mississippi." To this petition no written affidavit appears to be attached. Upon the petition, it was ordered by the court, at February term, 1850, that a citation issue to the heirs, to appear at the next May term, to show cause why the final account should not be allowed, and that publication thereof should be made in a certain newspaper, for sixty days. The publication was made accordingly; the citation being addressed to "Alexander Cason, James Cason,

and Thomas Cason, heirs and distributees of John Cason," as appears by the record of the court. At the succeeding May term, an order was made, reciting that the appellant had presented his final account for allowance, and that "the citations to the heirs having been returned executed, and due proof of publication having been made," the account was examined and allowed.

It was proved, on the hearing of this case, that there was not on file, in the office of the Clerk of the Probate Court, any affidavit of the appellant, or of any other person, showing the non-residence of James Cason, or Alexander Cason, nor any record in that office reciting that such an affidavit had been made; and it was proved by the attorney, who prepared the petition for final settlement, that he did not prepare any written affidavit of such non-residence, and that he had no recollection that such an affidavit was made by Cason, or any one else, or that the fact was in any way proved or sworn to; but that it might have been made and he not recollect it; and he could not say that it was not made.

It was further proved by the Probate Judge, who held that office at the time when the order of publication in question was made, that by the rules of that court, petitions like the one upon which the order of publication in this case was made, are required to be sworn to, and that the uniform practice is, to write them on the petition, or on a separate paper, and file them, among the papers with which they are connected, in the court; that affidavits intended as the foundation of any order or proceeding in that court, are, by uniform practice, made in writing, and filed among its records, and that no departure from it had occurred to his knowledge, except where the affidavit in some cases had been written out, and the clerk, by mistake, had omitted to sign the *jurat*, which were very rare.

It is insisted, in behalf of the appellee, that, under this state of the case, the order of publication is void, because the record of the Probate Court does not show that any affidavit was made by the appellant, or by any other person, showing the non-residence of the appellee; and that such an affidavit must be proved to have existed as the foundation of the order; otherwise, that the order is without authority, and void.

The first position taken in support of this view is, that the statute is imperative; that when the legatees, heirs, &c., shall be non-residents of this State, " the executor *shall* make affidavit of the fact," in order to have publication made to give them notice of the presentation of his account. Hutch. Code, 682, § 12. And it is contended, that without such an affidavit made by the executor, an order of publication is illegal and void. We do not consider this a correct view of the statute.

The object of the statute was to render the affidavit of the executor sufficient evidence of the non-residence of the parties interested, to authorize the court in ordering publication. It was intended to prescribe that one particular kind of proof should be sufficient, and not to say that any other description of evidence which was competent and sufficient, by the general rules of law, to establish the fact, should not be admitted. The spirit and intention of the statute, doubtless are, that the court should have power to order publication whenever it should be satisfied, by competent and legal evidence, that the parties were non-residents, and that the affidavit of the executor should be competent for that purpose. And the word " *shall* " must be taken in the sense of *may*.

It is next said, that in order to give validity to the order, *it is necessary* to show affirmatively, that an affidavit was made; because the jurisdiction to make the order is dependent upon the showing by affidavit; and the Probate Court being a court of limited jurisdiction, every fact necessary to support the jurisdiction must be shown.

It is true, with respect to courts of special jurisdiction, that all necessary jurisdictional facts must be shown, in order to sustain the jurisdiction. But this rule applies to the question of jurisdiction as to *the subject-matter*, but not as to *the person;* for when the jurisdiction, as to the subject-matter, has once vested in a court of special jurisdiction, the rules which govern its exercise, as to the person, with respect to evidence, process, &c., are generally the same as those applicable to courts of general jurisdiction.

In the matter under consideration, there can be no question as to the jurisdiction of the court, in relation to the subject-matter; and the question here raised, then is, must the evidence on which

a Probate Court bases its judgment in every case, be shown by the record, in order to give validity to the judgment.

. It is to be observed, that the statute authorizing that court to receive the affidavit of an executor, as the foundation of an order of publication, does not require that the affidavit shall be in writing, or that it shall be made a matter of record. It will also be observed that the petition filed by the appellant, in order to have a settlement with the court, states that some of the parties interested in the estate were non-residents of the State; that upon consideration of that petition, it was ordered that publication should be made, for the period required by law, to give notice to non-residents; that a citation addressed to the parties by name, was accordingly published, and that "upon due proof of publication" the final settlement was afterwards allowed.

Now what was necessary in order to justify the court in granting the application for publication? It was that competent evidence, by the executor's affidavit or otherwise, should be adduced to show that the parties interested were non-residents. The court upon consideration of the matter made the order, and the record is silent as to the evidence upon which it was granted. But is it, therefore, to be presumed that it was without evidence, and that the judgment is not only erroneous but void? Quite the reverse. "There is no principle of law better settled," says the Supreme Court of the United States, "than that every act of a court of competent jurisdiction shall be presumed to have been rightly done till the contrary appears. Every matter adjudicated becomes a part of the record, which thenceforth proves itself, without referring to the evidence on which it has been adjudged." And again, in reference to the proposition, "that a sale by order of a court of competent jurisdiction, may be declared a nullity in a collateral action, if the record does not show affirmatively the evidence of a compliance with the terms prescribed by law, in making the sale," the court says: "We cannot hesitate in giving a distinct and unqualified negative to this proposition, both on principle and authority, too well and long settled to be questioned." *Voorhees* v. *Bank U. S.,* 10 Peters, 472, 473.

The validity of the order of publication, therefore, depends

entirely upon the question, whether the evidence upon which it was made was sufficient to authorize it; and as that evidence is not stated, and is not required to be stated, the presumption must prevail that the court acted correctly, and upon proper evidence.

The next ground of objection to the order of publication is, that it does not specify the names of the non-resident parties.    This is true; and it would certainly have been more regular and formal to state the names of the parties.    But that was a mere order awarding process.    The substantial thing was the notice to be published for the benefit of the parties, and that was issued under the sanction of the court.    It appears that the citation issued for publication was read in evidence from among the records of the court, and that it contained the names of the parties intended to be notified as non-residents, and that a copy of it was duly published, and recognized by the court afterwards as having been duly published.    This is sufficient for all substantial purposes of notice to the parties, who were rightly named in the citation and publication.

Again, it is insisted that the parol evidence introduced at the hearing, showed that the order of publication was made without affidavit of the non-residence.

But this testimony was clearly inadmissible to impeach the order of the court, upon the principles above stated.    The object of it was to show that the order was made without evidence, and by that means, to set it aside and render it null.

In taking the steps necessary to confer jurisdiction as to the person, it was unquestionably within the power of the court to decide, whether the evidence was sufficient to establish the fact upon which that jurisdiction depended.    And when the order of publication was made, it must be taken, in the absence of all showing to the contrary on the record, that the facts necessary to give the jurisdiction were proved, and that the court acted properly in exercising the jurisdiction.    This rule applies as well to courts of limited jurisdiction, as to those of general jurisdiction, when the matter adjudged is within the jurisdiction of the court; and the judgments of such courts are equally incapable of collateral investigation, however erroneous in fact they may be, and are conclusive until regularly reversed.    These principles appear

to have received universal sanction, and have repeatedly been recognized by this court. *Byrd* v. *State*, 1 How. 173; *Gildart* v. *Stark*, Ib. 450; *Wall* v. *Wall*, 28 Miss. 409.

It was, therefore, incompetent in this proceeding, to show that the Probate Court acted upon insufficient evidence or without any evidence, in awarding the order of publication, and the testimony introduced for that purpose, cannot go to sustain the decree annulling the final settlement. And it follows, from the foregoing views, that the court below erred in holding the order of publication void, and in vacating the final settlement on that ground; and that that settlement is binding and conclusive as to the rights of James Cason, as an original legatee in the will.

But this view of the subject does not preclude his rights derived from his survivorship of Alexander Cason, under the provisions of the will of John Cason.

It appears that Alexander Cason was a minor, when the order of publication was made; and that the publication was not addressed to his general guardian, nor to any guardian, *ad litem*, appointed by the court, in behalf of the minor. This is required by the statute, in order to give notice to the minor, and to charge him in the proceeding, Hutch. Code, 682, § 12; and as no such step was taken, the publication having been directed to the minor by name, the notice was not sufficient to bind him, and the final settlement must be considered as to him void for want of jurisdiction. And after the death of the minor, it was competent for the appellee claiming his interest in the estate as his survivor, to treat the final settlement as not binding upon him, and in virtue of his right to require another account to be made.

It, therefore, becomes necessary to examine the grounds of error complained of by the appellant, in the account which was taken under the order of the court after the final settlement was set aside.

The first objection taken is to the rule held by the court, upon the exception of the appellee, in relation to interest in cases of partial payments. The rule held by the court was, that where partial payments were made by the executor, the sum paid should first be applied to the interest, and the surplus after discharging the interest, should be applied to the principal. This is the rule

established by the statute in relation to contracts for the payment of money, (Hutch. Code, 643, § 57,) which is but an adoption of the rule of equity upon the subject. *Stoughton* v. *Lynch*, 2 Johns. Ch. R. 210. There is, therefore, no error in this respect.

The second objection is, that the court erred in overruling the appellant's exception to the account reported by the commissioner, on the ground that the appellant was therein charged with interest at the rate of eight per cent. on the amount of sales of the property of the estate.

It appears that the executor, without authority, undertook to loan the notes in his hands belonging to the estate. It does not appear that there was any necessity for such a step; and it can be regarded in no other legal view, than as an appropriation of the money to his own use; and in that case, he was clearly liable for interest. *Kerr* v. *Laird*, 27 Miss. R. 544. And the rate of interest allowed by the commissioner was that allowed by law at the time of the appropriation.

The next objection is, that the appellant was charged with money due on two notes belonging to the estate, made by Pease and Hunter, and which he was unable to collect.

It appears by the evidence, that these notes were loaned by the executor to other persons, in whose behalf judgments were obtained on them, and these judgments were in part unsatisfied. It does not appear that any timely efforts were made by the executor to collect them by suit, or by enforcement of the statutory lien against the property, for the purchase of which they were given. On the contrary, it appears that he loaned them, without legal authority, to other persons; and that is sufficient to make him liable for the money due thereon; unless it be made to appear that, by the use of the greatest diligence, the money could not have been collected or secured by any legal means; and such diligence is not shown here.

Another objection is, that the appellant was charged with interest upon the proceeds of the sale of some bales of cotton, from November, 1836, the time at which the money was received.

It appears that the executor had rendered no account of this money, either in his annual accounts or in his final settlement;

and no necessity or justification is shown for his retaining it in his hands, unaccounted for, so long a time. All benefit of it in the meantime was lost to the estate; and it is but just that it should be considered as having been applied to his own use. Under the circumstances, we think that he was properly charged with interest.

The only other objection is to the disallowance of a small sum of money paid by the executor to one Gorman. So far as we are able to understand this claim from the record, it does not appear to be a legal charge against the estate, and the evidence was not sufficient to entitle it to allowance.

Having thus examined the several questions presented for our consideration, we are of opinion that, as to the claim of the appellee as an original legatee, the decree setting aside the final account and settlement of the appellant, is erroneous, and should be reversed; but as to the claim of the appellee, in right of Alexander Cason, the account and final settlement were properly set aside by the decree; and also that there is no error in the rulings of the court upon the exceptions in the cause.

The decree is reversed, and the cause remanded, to be proceeded with in conformity to the rules herein declared.