## COTTON *v.* HARLAN.

### [87 South. 152, No. 21544.]

1. JUSTICES OF THE PEACE. *Court is one of record.*
    The court of a justice of the peace is a court of record andi of general juricdiction.

2. JUDGMENT. *On collateral attack on default judgment based on constructive service, jurisdictional facts presumed.*
    Where a judgment of a court of general jurisdiction is attacked collaterally, unless the contrary affirmatively appears from the record, all jurisdictional facts are conclusively presumed to have existed, whether there are recitals in the record to show them or not; and this rule applies, although the judgment attacked was rendered by default, on constructive service of process alleged to be defective.

3. JUSTICES OF THE PEACE. *Attack in trover on judgment under which sale was made held a collateral attack.*
    A claim in an action of trover that a judgment of a justice of the peace rendered by default, at a sale under which the property alleged to have been converted was purchased, is void because of defects in the service of process on the defendant therein, is a collateral and not a direct attack on the judgment.

APPEAL from circuit court of Pike county.

HON. D. M. MILLER, Judge.

Trover by E. R. Harlan against W. R. Cotton. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

*F. C. Lee* and *R. G. Price,* for appellant.

The only ground on which the court allowed this case to go to the jury was on the ground that Miss Lula Quin had made no affidavit that Cotten was a nonresident, and if her testimony had been allowed to stand, would have created a doubt at least in the minds of the jury, sufficient to make her attachment good. *Quarrles* v. *Hiern,* 14

So. 23, is decisive on this point and Judge COOPER held in that case as follows:

"While one against whom a judgment is rendered without notice, may have relief upon disproving the return of the officer, it is incumbent upon him to make clear and convincing proof; it will not be sufficient, if on the whole case, the matter is left in doubt."

Refused instruction No. 8 goes to the heart of this question, and should reverse this case. "The court instructs the jury for the defendant that if they believe from the evidence that Miss Lula Quin made an affidavit before Judge GWIN, J. P., that the defendant in the attachment was a non-resident of the state of Mississippi, and that his post-office address was unknown, and that she had made diligent search and inquiry to ascertain the same without success or substantially to that effect, then Harlan got a good title at the sale under attachment and this is true whether or not the affidavit was filed, then you should find for the defendant."

We submit that the learned court erred, not only in excluding Miss Quin's testimony and refusing the above instruction, but in doing so, allowed the justice of the peace to make good an impeachment on his own official record, by the statement "he didn't know."

Citing the same case above given, of *Quarrels v. Hiern*, it was further held: "Some faith and credit is to be given to the acts of sworn officers, and to the return they make in reference to the discharge of their official duties."

In this case, the justice of the peace did not testify that the affidavit had not been made, and his docket showed affirmatively that search had been made for Cotton, as well as inquiry, and that the address was still unknown.

In refused instruction No. 4 in light of the case of *Quarrels v. Hiern*, cited above, should have been given, it is as follows: "The court instructs the jury for the defendant that if Harlan purchased the automobile of Cotton when it was sold under the judgment and execution of Miss Lula Quin in good faith, and thereby became a *bona-fide* pur-

chaser, is not effected by the irregularities in' a judgment or in an execution and that if you believe from the evidence in this case that Harlan bought of W. R. Cotton in good faith, then he has a perfect title to same, and you should find for the defendant." The Quarrels case cited above, further holds:

"Under such circumstances, he was entitled to act upon the assumption that the officer had discharged his duty by making publication, and though irregularities may have existed in the publication on its notice, his title acquired at the sale cannot be effected. *Long* v. *Reid,* 53 Miss. 73; *Hank* v. *Neal,* 44 Miss. 212; *Minor* v. *President, etc., of Natchez,* 4 Smeedes and Marshall 602; Freeman on Execution, 286."

Referring to Harlan's testimony on page 8 at the top of the page, you will find the following testimony; Question. "Did you have any notice of any defects in the legal proceedings had by Miss Quin. Answer. "I did not." This goes to show that Mr. Harlan attended a constable's sale, and purchased the automobile in good faith, without notice of any legal defects, and under the case of *Quarrels* v. *Hiern,* cited above, his title to same should not be affected.

We respectfully submit that this case should be reversed.

*E. G. Williams* and *J. J. Cassidy,* for appellee.

The plaintiff's theory of the case is that the sale made in Miss Quin's suit is void, and that Harlan, having sold the car and appropriated the proceeds to his own use, is liable in conversion for the amount received for the car, less the debt owing by Cotton to Harlan. The lower court adopted that theory, and regulated the introduction of testimony and the instructions to the jury accordingly. That the sale made in the attachment suit of Miss Quin's against Cotten is absolutely void and the purchaser at said sale, Harlan therefore acquired no title, seems to us to be be-

yond dispute. Section 147 of the Code of 1906, section 139, Hemingway's Code; *Ponder et al.* v. *Martin et al.,* 80 So. 388, and *Carter* v. *Brandy,* 71 Miss. 240, 15 So. 790, in which latter case it was held that in order to divest title of a nonresident brought in by publication, there must be conformity to law. The record of the justice of the peace, Judge Gwin, does not show that an affidavit as required by the section of the code just quoted was filed, and neither he nor Miss Quin can say that they ever thought that this was done. Miss Quin testified that she held up her hand and took some sort of oath, but even if she did, this does not meet the requirements of the statute and lower court correctly so held, record page 53. There was no effort to impeach Judge Gwin's records; it was only sought to supplement or perhaps rather to perfect his imperfect records of the proceeding in his court, and his testimony was unobjectionable.

The sale made to Harlan under execution conferred no title on Harlan. He is liable to Cotton for the amount that he realized for the car less the debt owing by Cotton to him, and no demand on him was necessary in order for Cotton to maintain this suit. It is a settled law in this state that where the taking is tortious no demand is necessary. *Witherspoon* v. *Blewett,* 47 Miss. 570, in which case on page 573 of the opinion, it is said, a tortious taking implies hostility and defiance of the plaintiff's right and indicates a purpose to apply the thing to the defendant's use, and where and when Harlan sold the car and retained the proceeds he certainly falls within the rule announced in this case.

Mr. Harlan's innocence, lack of knowledge of the fact leading up to the sale, at which he bought, or his good faith can only relieve him from the liability of punitive damages, and none were insisted upon during the trial or allowed, so he has nothing to complain of on that score.

When the instructions are read together, they correctly announce the law, telling the jury that they should find for the plaintiff for the difference between the amount

that Harlan realized from the sale of the car, including the sale of the parts or accessories taken off and sold before the car was sold as junk, and the cost he had incurred and the amount of the debt owed by Cotton to Harlan, submitting the calculation or determination of this amount to the jury under the evidence and there was ample evidence to justify the jury in finding this amount to be fifty dollars, and rendering a verdict accordingly.

We respectfully submit that no error was committed on the trial of this case in the lower court; that the right result has been reached, and the judgment of the lower court should be affirmed.

SMITH, C. J., delivered the opinion of the court.

This is an action in trover, begun by the appellee to recover of the appellant the value of an automobile, alleged to have been the property of the appellee and to have been converted by the appellant to his own use. The appellee purchased an automobile at a sale under a judgment in attachment against the appellee rendered in the court of a justice of the peace. One of the grounds of the attachment, as appears from the affidavit by which the proceeding was begun, was that the defendant therein was "a nonresident of this state." The judgment recites that publication was made for the defendant, but is silent as to whether or not the judgment creditor filed with the justice of the peace an affidavit "showing the post office of the defendant, or that he has made diligent inquiry to ascertain it without success," as required by section 147 of the Code of 1906 (Hemingway's Code, section 139), and no such affidavit appears among the papers in the proceeding which were introduced in evidence by the appellee. Each of the parties introduced parol testimony relative to the filing of this affidavit, from which the court below seems to have decided that the affidavit had not been filed, and that the justice of the peace was consequently without jurisdiction to render the judgment, for a peremptory instruction re-

quested by the appellant was refused, the jury was directed to return a verdict for the appellee after assessing his damages, and there was a verdict and judgment accordingly.

Whether or not the judgment creditor filed with the justice of the peace in the attachment proceeding the affidavit required by the statute, setting forth the post office of the defendant therein, or the creditor's failure to ascertain it, cannot be inquired into here, for the reason that the court of a justice of the peace is a court of record and of general jurisdiction. *Brian* v. *Davidson,* 25 Miss. 213; *Stevens* v. *Mangum,* 27 Miss. 481; *Vicksburg Grocery Co.* v. *Brennan,* 20 So. 845. And where a judgment of such a court is attacked collaterally, as in the case here (*McKinney* v. *Adams,* 95 Miss. 832, 50 So. 474), unless the contrary affirmatively appears from the record, all jurisdictional facts are conclusively presumed to have existed, whether there are recitals in the record to show them or not. Cooley's Constitutional Limitations, 406; *Ames* v. *Williams,* 72 Miss. 760, 17 So. 762; *Gillespie* v. *Hauenstein,* 72 Miss. 838, 17 So. 602; *Vicksburg Grocery Co.* v. *Brennan,* 20 So. 845; *Allen* v. *Dicken,* 63 Miss. 91; *Kelly* v. *Harrison,* 69 Miss. 856, 12 So. 261.

An exception to this rule is made by few courts, where the judgment attacked was rendered in a proceeding in which process was served upon a nonresident defendant by publication of the summons, without an appearance by him; but, according to the weight of authority, such an exception is arbitrary and illogical, and we so hold. *Cason* v. *Cason,* 31 Miss. 578; Black on Judgments (2d Ed.), vol. 1, section 271 and 281; 15 R. C. L. 889; *Applegate* v. *Lexington,* 117 U. S. 255, 6 Sup. Ct. 742, 29 L. Ed. 892; *Hardy* v. *Beaty,* 84 Tex. 562, 19 S. W. 778, 31 Am. St. Rep. 80; *McHatton* v. *Rhodes,* 143 Cal. 275, 76 Pac. 1036, 101 Am. St. Rep. 125.

The cases of *Ponder* v. *Martin,* 119 Miss. 156, 80 So. 388, and *Carter* v. *Brandy,* 71 Miss. 240, 15 So. 790, relied on by the appellee, are not here in point. In the first, the

question of the validity of the decree complained of arose on a direct appeal therefrom; and in the second, the infirmity in the title to the land involved did not arise out of any defect in the decree under which it was sold, but out of a defect in the sale made pursuant to the decree, and, as the court in its opinion pointed out, the rules applicable to a collateral attack upon a judgment or decree did not apply.

The peremptory instruction requested by the appellant should have been given.

Reversed, and judgment here for the appellant.

*Reversed.*