CORTNER *v.* P'POOL

No. 40151             April 23, 1956             86 So. 2d 877

*Ethridge, Minniece & Bourdeaux, G. Rayner Gaillard,* Meridian, for appellant.

*J. V. Gipson, Miller & Adams,* Meridian, for appellee.

McGᴇʜᴇᴇ, C.J.

This suit is one wherein the plaintiff, Oscar P'Pool, a contractor, agreed in writing to build a concrete swimming pool for the defendant, George V. Cortner, at an original contract price of $3,500.00 on June 22, 1954, and where there was a supplemental agreement entered into between the parties on September 1, 1954, to cover certain changes and extras not contemplated in the original contract. The supplemental agreement discloses that the changes and extras provided for therein were to cost defendant the additional sum of $911.60, which the defendant admits that he still owed the plaintiff, less a payment of $400.00 thereon, at the time this suit was filed by the plaintiff to recover of the defendant the sum of $4,026.31, representing a balance of $856.10 on the original contract price, the sum of $511.60 balance admitted to be due for extras, and other amounts, not covered by the supplemental agreement, on account of the changes and extras agreed upon by the parties during the course of construction.

The defendant contended upon the trial that the changes and extras had been made and furnished by the plain-

tiff under oral agreements between the parties between the dates of the execution of the original contract and the supplemental contract. There was a motion filed by the defendant to strike from the plaintiff's declaration claims for compensation for the work in excess of the $1,367.70 on the ground that all of the oral conversations and agreements of the parties were merged into the written supplemental contract of September 1, 1954. This motion to strike was overruled, and that action of the court is one of the alleged errors assigned on this appeal.

The defendant filed a cross-claim against the plaintiff for the sum of $2,582.30 alleged to be due because of alleged defective workmanship in the building of the swimming pool and due as damages to the defendant because of the sums necessary to be expended in repairing the alleged defects in workmanship.

The plaintiff recovered a judgment, based on the verdict of a jury for the sum of $2,500.00, and obtained a lien against the swimming pool and one acre of ground for the enforcement of the collection of the $2,500.00 judgment and all costs. From this judgment the defendant appeals, and the plaintiff does not cross-appeal.

The original written agreement of June 22, 1954, merely provided that Oscar P'Pool was to build the swimming pool on the property of George V. Cortner for the sum of $3,500.00, the sum of $2,500.00 of which was to be paid as the work progressed and the remaining $1,000.00 to be paid on or before October 1, 1954. That agreement did not provide any plans and specifications as to the manner in which the swimming pool was to be built, nor as to the dimensions thereof. There is a drawing prepared by the plaintiff contained in the record designated as Plan No. 100, but which was not made an exhibit to the original written contract.

The plaintiff testified that the walkway around the outer edge of the pool was increased in width, by oral agreement of the parties, from about 2 feet to 8 feet and

8 inches in order that the defendant might have room thereon to place tables and chairs for the commercial use by patrons of this pool; that the wall which was understood by oral agreement to be built on a slant was subsequently changed to a vertical wall, necessitating the use of double forms and considerable additional expense to the contractor; that the dimensions of the pool both as to width and length were considerably increased at the request of the defendant and subsequent to the original contract; and that there were other substantial changes made as to the building of the pool at increased expense to the contractor. Whereas the defendant contended that all of these verbal agreements as to changes and extras were merged into the supplemental written agreement of September 1, 1954, at an agreed additional cost of $911.60, as shown by an itemized statement attached as an exhibit to the supplemental agreement as a part thereof, and that therefore the testimony offered by the plaintiff as to the cost to him in making the changes and furnishing the extras was incompetent and inadmissible as tending to alter, vary and contradict the supplemental written agreement into which the prior conversations and verbal agreements had merged.

The supplemental agreement provides that the "swimming pool is to be constructed by P'Pool, who is to furnish all labor and materials for a complete, workmanlike job according to plan No. 100, as agreed upon between the parties hereto with the following alterations, to-wit:

"A. The apron or drain running all the way around the outside edge of said swimming pool, except on the dam end thereof, is to be increased in width to eight feet and eight inches measured from the edge of the pool to the inside edge of the side wall consisting of a poured concrete slab four inches in thickness. The said apron will be constructed with the necessary expansion joints and with a two inch fall from the pool to the

gutter in said apron which is to be located adjacent to the side wall.

"B. The said side wall is to be located at the outside edge of the said apron, running the entire length of the apron except on the dam end of the said pool and be two feet high above the surface of the said apron.

"It is agreed that the balance due the contractor on the original contract price for the construction of the pool, the above amendments and all extras furnished, is as shown on the last page hereof, which is attached to and made a part of this agreement. It is further agreed that Mr. Cortner will furnish materials needed to complete the apron and pay the balance of Four Hundred Dollars ($400.00) for the apron upon its completion. The balance of the contract price as amended on the attached page to be paid upon completion of the pool in accordance with the said plan, as amended by this agreement, to the satisfaction of the parties. Any disputes or differences arising under these arrangements shall be determined by submitting them to a registered engineer to be selected by agreement of the parties.

"It is further understood and agreed that the contractor will complete the said pool and all additions and extras in accordance with the plan, as amended, with all leaks eliminated, within thirty working days from this date."

It is to be noted that in the next to the last paragraph above quoted it was agreed that the balance due the contractor on the original contract price and for the "amendments and all extras furnished is as shown on the last page hereof, which is attached to and made a part of this agreement." The page attached to the supplemental agreement and made a part thereof shows that on the original contract price of $3,500.00 the sum of $2,643.90 had been paid, leaving a balance of $856.10, and that the additions and extras were to cost $911.60, making a total balance of $1,767.70 on which there had

at that time been paid the sum of $400.00, which represented the compensation to the contractor for increasing the width of the apron around the pool, and which left a net balance admittedly due the contractor of $1,367.70.

Plan 100 provided that the pool should be roughly horseshoe shaped, its concrete walls were to be laid on the surface of the ground, slanting just as the concrete of a driveway is laid. Plan 100 made no provision for draining the pool or keeping trash from washing into the pool. As the work on the pool progressed appellant had appellee make a number of changes from the original Plan 100.

The plaintiff P'Pool testified that the defendant Cortner had him to change the slanting wall around the pool to a vertical wall and to enlarge the dimensions of the pool; that this change in the wall cost the plaintiff $1,038.51 and that the cost of adding one foot to the height of the wall was $124.00; that the extra cost of the drainage facilities was agreed to be $250.00; that the agreed cost for a sump pool was to be $250.00, not provided for in the original contract; that the agreed additional cost to the plaintiff for increasing the apron of the swimming pool from 2 feet to 8 feet and 8 inches in width was the sum of $400.00, and that the scum gutter was to be extra at a cost of $11.60. These items are listed on the page attached to the supplemental agreement and made a part thereof, dated September 1, 1954, with the exception of the item of $1,038.51 and the item of $124.00.

The defendant Cortner testified, when asked about the item of $1,038.51 claimed by the plaintiff P'Pool for changing the slanting wall to a vertical wall, that the plaintiff said to him, "George, it looks like I am going to have to double form these walls. I want to talk to you about some more money." That the defendant told the plaintiff, "Mr. Oscar, I am not going to pay more. We agreed on thirty-five hundred. If you can double

form cheaper, that is up to you." The defendant further stated that no figure was mentioned by the plaintiff as to the cost of changing the slanting wall to a vertical wall, and that he refused to agree to pay anything for that change being made. The plaintiff did not testify that the figure of $1,038.51 was agreed upon, but did testify as to why the change in the original plan would cost him more money for materials and labor for making the change from a slanting wall to a vertical wall.

■■ At any rate, any conversations and oral agreements had between the parties between the date of the original contract of June 22, 1954, and the supplemental contract of September 1, 1954, were merged in the supplemental written agreement and no mention was made therein as to the payment for any changes and extras except as to the following items: For scum gutter $11.60; for increase in the width of the apron around the pool $400.00; for the sump pool $250.00; for the drain valve and valve well $250.00, or a total increase in the original contract price of $911.60. Crediting the original contract price of $3,500.00 with the sum of $2,643.90 paid thereon, and crediting the $911.60 with the $400.00 paid thereon, leaves the net balance of $1,367.70 due the plaintiff.

■■ The testimony introduced over the objection of the defendant tending to establish his liability for the cost of changes and extras not covered in the written supplemental agreement was incompetent and inadmissible, since the conversations and oral agreements in reference to such changes and extras were merged into this supplemental written contract on September 1, 1954, and the claim for the additional changes and extras is for work done prior to the execution of the supplemental written agreement. The work covering a period of about 15 days thereafter performed was in connection with remedying defects in the then existing construction.

There is no contention that any fraud was involved in connection with the execution of the supplemental

written agreement nor that any stated compensation for other items were omitted therefrom because of a mistake or inadvertence.

The proof on behalf of the defendant on his cross-claim of $2,582.30 that he alleged it would cost him to remedy the defects in the pool in a workmanlike manner, was insufficient to establish the claim for that amount or any other sum with a reasonable degree of certainty.

If the appellee P'Pool should enter a remittitur of $1,132.30 of the $2,500.00 judgment recovered, and shall do so within fifteen days from this date, the judgment will be affirmed; otherwise, the cause will stand reversed and remanded for a new trial, the defendant not having requested an instruction specifically limiting the recovery of the plaintiff in any event to the $1,367.70 admitted to be due.

Affirmed with Remittitur.

*Hall, Kyle, Holmes* and *Gillespie, JJ.,* concur.