Hollingsworth, et al. *v.* Central Oil Co., et al.

No. 41177 May 25, 1959 112 So. 2d 518

*Swep S. Taylor, W. B. Fontaine,* Jackson, for appellants.

*McFarland & McFarland,* Bay Springs; *L. D. Pittman,* Raleigh; *Wells, Thomas & Wells,* Jackson, for appellees.

McGehee, C. J.

This suit was brought by the appellants, Mrs. Mittie B. Hollingsworth and others, to have canceled and held for naught as alleged clouds upon their title certain conveyances of record in Smith County whereby the appellees, Central Oil Company and others, were claiming title to 160 acres of land in said county together with the oil, gas and other minerals thereunder. The complainants claim an undivided five-sixth interest in the two forty and the two twenty-acre tracts involved.

The complainants deraigned title from the United States Government for each tract of the land involved and then alleged that the title thereto passed by mesne conveyances unto W. H. Beavers who died intestate on March 17, 1908. The deraignment of title is admitted by the appellees down to the said W. H. Beavers and it is undisputed that he is the common source of title of the land and the minerals. The appellees, Central Oil Company, et al., claim title through a special commissioner's deed which was executed by G. M. Martin, sheriff and special commissioner, on the 21st day of July 1909, at the purchase price of $550 which was duly and fully paid.

The appellants in this proceeding attack the validity of the decree of the chancery court of January 19, 1909, pursuant to which the land was advertised and sold by the special commissioner for a division of the proceeds of the sale, both on the ground of the lack of process on all of the parties as heirs at law of W. H. Beavers, deceased, and on the ground that the proceedings failed to show that the land was incapable of an equitable partition in kind.

Various mineral interests are now claimed by numerous corporate and individual defendants involving one hundred acres of the land, and the same is true as to the ownership of the remaining sixty acres, which is alleged by the appellees to be in the Wilkinson Memorial Baptist Church, and which Church has executed numerous oil and gas leases thereon.

The said W. H. Beavers, deceased, left surviving him as his sole heirs at law I. J. Beavers, Alonzo Beavers, Belle Beavers Womack, Jake Beavers, Ellen Beavers Jones, and Mittie Beavers Hollingsworth. It is not alleged in the bill of complaint as to who were the complainants in the partition suit other than Ellen Beaver Jones. It is alleged that process was issued for I. J. Beavers, Alonzo Beavers, Mittie Beavers and Belle Womack. The general Chancery Court docket of Smith County so shows, and that the first process for these defendants was issued December 12, 1908, and that another process was issued for the same defendants on June 8, 1909. This docket fails to show any return on the process, but the bill of complaint alleges that the court file in the partition suit as to the Beavers' land was lost or destroyed and was unavailable at the time of the trial of this cause.

It is reputed that the courthouse in Smith County burned both during the years 1892 and 1912, but that on the latter occasion the county records were not all destroyed but merely the court files. The chancellor, Sam Whitman, and many of the other county officers have died since the partition decree was rendered approximately fifty years ago. The decree pro confesso rendered by Chancellor Whitman on January 19, 1909 recites: "It appearing to the court that said defendants had been personally served with process as the law directs in this case for more than the time prescribed by law before the beginning of this term and the court being of the opinion that said motion (for a decree pro confesso) should be sustained and that the decree pro

confesso granted on defendants' failing to plead answer or demurrer.'' It was so ordered.

The decree above referred to styles the case as ''Ellen Jones, et al. v. I. J. Beavers, et al.,'' and although the bill of complaint in the instant case alleges that Alonzo Beavers, Belle Beavers Womack and Mittie B. Hollingsworth were minors at that time, being 16, 15 and 13 years of age respectively, it does not appear as to whether or not the minors had in the meantime joined in the petition by their sister, Ellen Beavers Jones, as next friend, nor is it shown as to whether or not an amended petition had been filed.

On the same day, January 19, 1909, the chancellor rendered a decree reciting therein that ''Upon reading the petition filed in the above-styled cause and the court having been fully advised in the premises doth find that W. H. Beavers died intestate on or about the 17th day of March 1908, seized and possessed in fee simple of the following described lands: (describing 160 acres as the land here involved.)'' He further found that the defendants were all tenants in common of the land and entitled to have the same partitioned in their respective parts. This decree however appointed G. M. Martin, sheriff, as a commissioner to make the sale and report to the court in vacation.

On July 20, 1909 the said chancellor confirmed the report of the commissioner, there reciting in his decree that ''The land sold brought a fair price and at said sale J. M. Martin appeared and became the best and highest bidder in the sum of $550 and has paid $550 to said commissioner which sum is now in court.'' The decree mentions that the said J. M. Martin, purchaser, held a lien on the land in the sum of $500.42, and it is alleged in the bill of complaint that because J. M. Martin, the purchaser, sold the land to C. M. Womack, the husband of Belle Beavers Womack, the said grantee from J. M. Martin became a tenant in common with the other children

of W. H. Beavers, deceased, his wife having predeceased him.

The bill of complaint alleges that the appellees and their predecessors in title have been "in the open, notorious, hostile, *exclusive,* actual, uninterrupted possession of said land from 1916 to 1917 down to date insofar as the same covers all of the lands herein except the east 60 acres of the W½ of the SW¼, of Section 22, T2-N, R7E," (Emphasis ours) and the bill further alleges that the Wilkinson Memorial Baptist Church, its predecessors and successors in title "have been in the open, notorious hostile, *exclusive,* actual and uninterrupted continuous possession of said lands from 1916 down to date." (Emphasis ours.) No facts are alleged in the bill of complaint that would show that this sixty acres of land was held in trust in tenancy in common with the complainants. It is the contention of the appellants however that "this possession was as a tenant in common with them" of all the land involved.

It is the theory of the appellants that the Chancery Court of Smith County was acting as a court of special and limited jurisdiction in the partition suit in question, and that therefore it was necessary for it to have affirmatively appeared from the record that all things necessary to be done to make the partition sale a valid one were done and performed. The brief here on behalf of the appellants is largely based upon that erroneous theory.

 It was held in the case of Cotton v. Harlan, 124 Miss. 691, 87 So. 152 that: "Whether or not the judgment creditor filed with the justice of the peace in the attachment proceeding the affidavit required by the statute, setting forth the post office of the defendant therein, or the creditor's failure to ascertain it, cannot be inquired into here, for the reason that the court of a justice of the peace is a court of record and of general jurisdiction. Brian v. Davidson, 25 Miss. 213; Stevens

v. Mangum, 27 Miss. 481; Vicksburg Grocery Co. v. Brennan, 20 So. 845. And where a judgment of such a court is attacked collaterally, as in the case here (McKinney v. Adams, 95 Miss. 832, 50 So. 474), unless the contrary affirmatively appears from the record, all jurisdictional facts are conclusively presumed to have existed, whether there are recitals in the record to show them or not. Cooley's Constitutional Limitations, 406; (Citing numerous Miss. decisions.)'' Under both the Constitution and laws of this state the chancery court is also a court of record and one of general jurisdiction.

■■■ Under Sec. 3122, Code of 1906, in force at the time the partition suit in question was decided, it is provided as follows: ''An action shall not be brought to recover any property hereafter sold by order of a chancery court, where the sale is in good faith and the purchase-money paid, unless brought within two years after possession taken by the purchaser under such sale of the property.'' In the instant case the bill of complaint alleged that the purchase-money was paid, and that the purchaser at the partition sale and his successors in title have been in possession of the land since the year of the sale, and it is not alleged in the bill that the sale was not in good faith. In the absence of such allegation and proof, good faith would be presumed. But see Martin v. Gilleylen, 70 Miss. 324, 12 So. 254, wherein the said statute was held to be then inapplicable to a partition proceeding.

The appellees not only pleaded this then inapplicable statute, now Sec. 745, Code of 1942, but also pleaded in defense of the suit Secs. 3536 and 3541, Code of 1906 and Secs. 709, 710 and 711, Code of 1942, as well as Sec. 4780, Code of 1906 (Sec. 269, Code of 1942.) The appellees also pleaded the defense of laches on the part of the complainants since they had waited for a period of approximately fifty years before bringing this suit, and failed to allege that during the forty years following the

partition decree they were not advised as to whatever rights they may have had in the premises, or that there was any concealed fraud.

The partition decree of January 1909 is not shown to have been appealed from and the instant suit is a collateral attack upon that decree, and is not maintainable. Grimstead v. Foute, 26 Miss. 476; Sweatman v. Dean, 86 Miss. 641, 38 So. 231; Cocke v. Simmons, 57 Miss. 183; Federal Reserve Bank of St. Louis v. Wall, 138 Miss. 204, 103 So. 5; Brotherhood of Railroad Trainmen v. Agnew, 170 Miss. 604, 155 So. 205; Prudential Insurance Company v. Gleason, 185 Miss. 243, 187 So. 229. See also Martin v. Miller, 103 Miss. 754, 60 So. 772; Touchstone v. Moore, 227 Miss. 715, 86 So. 2d 352; McIntosh v. Munson Road Machinery Company, 167 Miss. 546, 145 So. 731; Honeywell v. Aaron, 228 Miss. 284, 87 So. 2d 562; Morgan v. Hazlehurst Lodge, 53 Miss. 665; and Stephens, et al. v. Moore, et al., 214 Miss. 760, 59 So. 2d 346.

Aside from the other cases cited above, the case of Stephens v. Moore, supra, and the cases therein cited are controlling on the question here involved.

So far as we know the lost court file in the partition suit in 1909 failed to disclose whether or not any of the parties to the suit were minors.

The chancellor in the instant case sustained the general demurrer and the pleas of the statute of limitation, and held that this demurrer and all of the special pleas "with the exception of the plea of laches should be sustained and the original bill of complaint dismissed." The complainants thereupon declined to plead further and the suit was dismissed and hence the appeal here.

While we are of the opinion that the chancellor would have been amply warranted in sustaining the plea of laches, we are of the opinion that his sustaining the demurrer and the pleas of the statute of limitation was correct, since the bill of complaint showed on its face

that the cause of action is long since barred by these statutes of limitation, and that the recitals in the partition decree of January 19, 1909 are conclusively presumed to be correct upon this collateral attack, since the court rendering the same was a court of record and one of general jurisdiction as aforesaid.

The decree appealed from must, therefore, be affirmed.

Affirmed.

*Lee, Kyle, Arrington,* and *Gillespie, JJ.,* concur.