In The Matter Of The Last Will And Testament Of
Mrs. Bobby Nell Arrington Case *v.* Case, Executor

No. 42594          February 25, 1963          150 So. 2d 148

*W. W. Hewitt,* Meadville; *Allen & Patterson,* Brook-
haven, for appellants.

*Arrington & Arrington,* Hazlehurst; *Mike L. Carr,* Brookhaven, for appellee.

Lee, P. J.

Mrs. Bobbie Nell Arrington Case died testate in Lincoln County, Mississippi, on January 28, 1960. Prior to her death, on September 16, 1955, she had entered into a ceremonial marriage with George Lee Case. Her last will and testament was probated first in common form and then in solemn form, the latter decree being entered June 3, 1960. Under the terms of the will, George Lee Case, the decedent's husband, as her only heir, was the sole beneficiary.

Thereafter on September 6, 1960, Mrs. J. M. Hall, a grandmother, and certain uncles and aunts, of the decedent, filed a caveat and contest of the will. To this pleading, with attached exhibits, Case filed general and special demurrers.

On November 18, 1960, the contesting parties filed an amended petition for caveat, contest of the will, and determination of the legal heirs of the decedent. The original and amended petitions charged, in effect, that George Lee Case was not the legal husband of Bobbie Nell Arrington because, at the time he attempted to

enter into a marriage with her on February 16, 1955, he was legally married to one Ruby Bryant Case; that Case had attempted on February 24, 1954, to secure an annulment of his marriage to Ruby Bryant and a certified copy of that proceeding in the Chancery Court of Lincoln County was attached; but, that the petition was null and void because (1) there was no legal process on the defendant; (2) the bill of complaint sought an annulment on grounds which, by statute, are made grounds for divorce only; (3) that no facts were in fact alleged in the bill, and, on its face, they were insufficient to constitute a cause of action; (4) the bill of complaint did not allege that no divorce or dissolution of the pre-existing marriage between Ruby Bryant Marrow and W. H. Marrow had ever been granted; (5) there was no allegation that both parties to the pre-existing marriage were alive at the time of the second marriage; (6) there was no allegation as to their residence; (7) the decree made no adjudication as to the invalidity of the marriage from its inception; (8) according to the decree, the cause was heard at one term but not decided until the next; (9) the facts as alleged were insufficient to invoke the jurisdiction of the court; (10) and the decree was fraudulently procured from the court.

It was further alleged that Ruby Bryant had been previously divorced and that, since her marriage to Case had never been legally dissolved, Case was incapable of entering into marriage with Bobbie Nell Arrington. Besides, it was charged that Bobbie Nell Arrington was mentally incapable of contracting a marriage, or disposing of her property; that she did not have any lucid intervals; that the alleged will was executed under duress and undue influence; that Case abandoned and deserted her, and, for that reason also should be estopped to claim her property; and that the contestants were the legal heirs-at-law of the decedent and as such were entitled to her estate.

The attached exhibits were photostatic and certified copies of the bill of complaint, process and service thereof on the defendant, and the final decree, in Cause No. 11,708 in the Chancery Court of Lincoln County, Mississippi, being the case of George Lee Case v. Mrs. Ruby Bryant Marrow, and of the marriage license of George Lee Case and Bobbie Nell Arrington.

The bill of complaint of George Lee Case against Mrs. Ruby Bryant Marrow, as exhibited, charged that the complainant was a resident citizen of the City of Brookhaven, Lincoln County, Mississippi, for more than one year next preceding the commencement of the suit, and that the defendant was a nonresident of the State of Mississippi and was a resident citizen of Cobb County, Georgia, whose post office was Route 3, Box 134, Smyrna, Georgia; that a short time prior to April 18, 1953, he had become acquainted with the defendant, who assured him that she was a single woman; that relying upon her statements, they agreed to get married, and on April 18, 1953, he obtained a marriage license for himself, George Lee Case, and the defendant, who gave her name as Miss Ruby Bryant, and, on that date, the rites of matrimony were performed by an official of Lincoln County. The bill charged that the complainant sincerely believed that the marriage was valid and honorable in every way and he lived with defendant until about June 1, 1953, when the defendant informed him that she was married legally to W. H. Marrow and that they had never been divorced. As a result of this information, he charged that he was greatly shocked and immediately left the defendant, whose real name was Mrs. Ruby Bryant Marrow, and that he made it plain to her that he would never live with her anymore, as she had a living husband from whom she was not divorced, and that he has never lived with her since that date. The bill then set up that under this ''state of facts'' he was entitled to have the unlawful marriage between himself

and the defendant canceled, annulled and set at naught. In other words, the bill was filed by a lawful resident citizen in the county and state where the marriage had been solemnized. It undertook to represent and alleged that the complainant went through a marriage ceremony with a woman, whom he believed to be single; but that shortly afterward, she informed him that she was then married to another man, had not been divorced from him, and gave his name; and, as a result, he was shocked, told her that he would not live with any woman with a living husband, left her immediately, and had not lived with her since. For that reason, he sought to have the unlawful marriage between them canceled, annulled and held for naught. In addition, he prayed for general relief.

Process was effected by publication in a newspaper of the county of notice to the defendant at the stated address in the manner and for the time provided by law.

The decree, while stating that the matter came on for hearing at the "May 1954" term of court, clearly shows in the caption that this form was prepared on a typewriter evidently for use at some other term in 1954. But that term was blocked out, February was written instead, and the year 1955 was written over 1954. The date of the decree is February 15, 1955. Obviously the failure to have the "May 1954" term in the first paragraph conform to the other changes was a clerical omission and error. The decree, which recited that the matter was heard on bill of complaint, service of process on the defendant as required by law, and oral testimony introduced in open court, followed largely the language of the bill of complaint and provided that the invalid marriage between these parties "is hereby entirely, absolutely and forever annulled, dissolved, canceled and set at naught."

In other words, the record, in the action which dissolved the marriage between George Lee Case and Mrs.

Ruby Bryant Marrow, depicted a perfectly valid proceeding, and was at variance with the allegations of the petition.

To the amended petition, the defendant Case filed general and special demurrers, in which it was set up that there was no equity on the face of the petition, and that the petitioners failed to show that they were persons interested in the estate and having the legal capacity to contest the will of Mrs. Bobbie Nell Arrington Case, deceased.

The chancellor, in a lengthy written opinion, filed May 16, 1961, took up each of the contentions of the petitioners and endeavored to answer them. Subsequently, the written opinion was edited and revised and filed June 2, 1961. The demurrers were sustained, and the contestants were granted thirty days in which to amend.

Thereafter, the petition was amended in pursuance of the foregoing authority and charged that the allegations in the bill of complaint of George Lee Case against Mrs. Ruby Bryant Marrow were untrue; that Harold Morrow, on May 21, 1946, brought suit for a divorce against Ruby Morrow in the Law Court of Ducktown, Polk County, Tennessee, at a time when he was an adult resident of that county, and that process was had in accordance with the laws of the State of Tennessee, and that the court had full and complete jurisdiction of both the subject matter and the parties; that, while the records had been misplaced or destroyed and were not available, the final decree in said cause, a copy of which was attached, was available, and that, on a trial, the proof could and would be made that Ruby Marrow, the defendant in that suit, was one and the same person, who later married George Lee Case; that her marriage to Case was valid and legal and has never been legally dissolved; that she was living at the time when George Lee Case married Bobbie Nell Arrington and is still

living, and that this latter marriage was null and void from its inception.

To the amended petition, Case again filed general and special demurrers of the same tenor and effect as the preceding one.

In the meantime, the venerable chancellor, before whom this matter had been presented in its entirety, died. His successor heard the matter, and, in a written opinion, filed December 7, 1961, sustained the demurrers. The contestants having declined to plead further, their petition was finally dismissed. From the judgment entered, the contestants appealed.

The appellants contend that the trial court erred in holding (1) that they were not proper parties to contest the will; (2) that a cause of action was stated in the bill of complaint of George Lee Case against Ruby Bryant Marrow; (3) that the dissolution of that marriage was valid on its face; and (4) that the marriage between George Lee Case and Bobbie Nell Arrington was valid.

On the other hand, the appellee contends that the action of the trial court was correct and should be affirmed because the onus of his adversaries' complaint constitutes a collateral attack on the legality of the dissolution of his marriage to Ruby Bryant Marrow and his subsequent marriage to Bobbie Nell Arrington and the decedent's capacity to contract a marriage in order to show a sufficient interest in themselves to contest the will of the decedent; and that such a course is not open to them under the law.

(Hn 1) In Duvall v. Duvall, 224 Miss. 546, 80 So. 2d 752, the Court had occasion to explain the matter of jurisdiction. It pointed out that "Jurisdiction of the subject matter is the power of the court to hear and determine cases of the general class to which the particular case belongs. 21 C. J. S., Courts, Sec. 23. * * * (Hn 2) if a Court has jurisdiction of the subject matter,

it has the power to decide the case according to its own view of the law and the facts; * * *'' It was further pointed out that **(Hn 3)** ''When the court has jurisdiction of the parties and the subject matter, a judgment rendered on a complaint that does not state a good cause of action is not void and subject to collateral attack; and when a court dismisses a petition or complaint for failure to state a good cause of action the dismissal in such case, **(Hn 4)** when the proper parties are before the court and the court has general jurisdiction of the abstract question involved, is on the merits and not for lack of jurisdiction.''

**(Hn 5)** Jurisdiction of both divorce and annulment actions is lodged in the chancery court. **(Hn 6)** On the basis of the record, the Chancery Court of Lincoln County had jurisdiction of both the subject matter, whether divorce or annulment, and the parties. The bill of complaint contained sufficient substance to avoid castigation of no cause of action at all. The bill of complaint, in its prayer, used the words canceled, annulled and set at naught. In the decree, the proper tense of these verbs was used, and, in addition, it used the verb ''dissolved.'' By the ninth provision of Sec. 2735, Code of 1942, Rec.: ''Marriage to some other person at the time of the pretended marriage between the parties'' is a ground of divorce from the bonds of matrimony which may be decreed to the injured party. Annulment was therefore not maintainable for such cause. Divorce and Separation in Mississippi by Amis, Sec. 23, pp. 43-44; Bunkley and Morse's Supplement, Sec. 2.06, p. 39. (But see Chapter 278, Laws of 1962, now in effect.) Consequently the rational conclusion from the whole matter would be that the chancellor, upon hearing the bill and the oral evidence, granted the appropriate relief. Cf. Chrismond v. Chrismond, 211 Miss. 746, 52 So. 2d 624, where both annulment and divorce were sought in the same bill, and, the trial court having granted a divorce, this Court

justified that action because in the modern practice, under the general prayer, any relief consistent with the bill, within its scope, and justified by the proven facts, may be granted, citing Griffith's Miss. Chancery Practice, Secs. 186-7, pp. 173-5. See also United Timber & Lumber Company v. Hill, 226 Miss. 540, 84 So. 2d 921, where this Court explained that in the common and wider use of the term divorce, it includes both the dissolution of a valid marriage and the annulment of a marriage which was void from the beginning.

(Hn 7) The dissolution of the marriage of the appellee and Mrs. Ruby Bryant Marrow occurred February 15, 1955. Nowhere does it appear that Mrs. Marrow, even though divorced, it is charged, by the Tennessee court at the time of her marriage to appellee, had ever opened her mouth in the contest of the 1955 action. She is not doing so now. That proceeding is not being attacked by either of the parties thereto. Consequently, the present suit is a collateral attack on that proceeding. It is true that, if a decree is void on its face, or it is procured by fraud, it may be collaterally attacked at a subsequent term. Horne v. Moorehead, 169 Miss. 362, 152 So. 495; Natis v. Jackson, 205 Miss. 490, 38 So. 2d 925. But the record in the present case, on its face, does not appear to be void. Actually it appears to be good.

In the recent case of Rowell v. Logan, 243 Miss. 479, 138 So. 2d 737, the Court was dealing with this principle and the opinion made the following observation:

"The presumption as to regularity was well stated in Brotherhood of Railroad Trainmen v. Agnew, 170 Miss. 604, 155 So. 205, where it was said: 'The presumption of law is that public officers have performed their duties. And, as said by us in the recent case, Walton v. Gregory (Funeral Home), 170 Miss. 129, 154 So. 717, in respect to the judgment of courts of general jurisdiction, ''unless the contrary affirmatively appears

from the record, all jurisdictional facts are conclusively presumed to have existed, whether there be recitals in the record to show them or not, and this rule applies, although the judgment attacked was rendered by default, on constructive service of process alleged to be defective.'' The presumption mentioned is conclusive on a collateral attack; and on a direct attack, as is the case here, the presumption still stands unless the defendant affirmatively show that the defect complained of existed as a matter of fact.'

"In Whitley v. Towle, 163 Miss. 418, 141 So. 571, the return of the service was missing, and the appellant there contended that the record failed to show that the summons to the appellee to appear before the chancellor at the time and place mentioned was served. In response to that contention, the opinion said: 'In a direct attack on a decree it is, of course, competent to show that there was no service of summons, but *in a collateral attack, as is here made, unless the record affirmatively shows to the contrary, all jurisdictional facts are conclusively presumed to have existed, including the proper service of process.* It is not enough that the return of service is merely missing from the record — and that is all that is shown here. This exact point was settled in Federal Reserve Bank of St. Louis v. Wall, 138 Miss. 204, 103 So. 5.' (Emphasis supplied.) See also Cotton v. Harlan, 124 Miss. 691, 87 So. 152, and authorities there cited. See also Honeywell v. Aaron, 228 Miss. 284, 87 So. 2d 562, 88 So. 2d 558 where many authorities are collated. 562, 88 So. 2d 558 where many authorities are collated. Cf. also Hollingsworth v. Central Oil Company, 236 Miss. 779, 112 So. 2d 518.''

The previous decisions of this Court, as referred to in the above quotation, seem to settle the governing principle in this feature of the case beyond question. Obviously this phase of the suit is a collateral attack and it is not maintainable in this instance.

(Hn 8) On February 16, 1955, a ceremonial marriage was entered into between the appellee and the decedent. By the eighth provision of Sec. 2735, Code of 1942, Rec. "Insanity or idiocy at the time of marriage, if the party complaining did not know of such infirmity" is declared as a ground on which a divorce from the bonds of matrimony may be decreed to the injured party.

In Ellis v. Ellis, 152 Miss. 836, 119 So. 304, the surviving brother filed a bill to have adjudged as void, a marriage contracted by the deceased with one Miss Simmons, on the ground that the decedent was insane at the time, and that there was no ceremonial marriage. The opinion pointed out the difference between the common law and the state statutes on this subject, saying that marriage is under public regulation and that the State, under proper legislation, may declare what marriages between its own citizens shall be void and those that are merely voidable. It also pointed out that where the statutes expressly declare some marriages absolutely void and then enumerates others, including that of an insane person, which may be annulled, marriages following within such latter class are voidable only. The opinion then went on to say: "We think it may be stated, as the general rule, that 'a voidable marriage is valid for all purposes until avoided or annulled, and it cannot be attacked collaterally, but only in a direct proceeding during the lifetime of the parties. Hence, on the death of either, the marriage cannot be impeached, and is made good *ab initio.*' 18 R. C. L. 447, section 77; 2 Schoula on Marriage and Divorce (6 Ed.), p. 1372." In holding that there could be no relief in this case, the opinion said: "During the life of the parties no such suit was filed, and, applying the general rule as heretofore set out in this opinion, no suit can be filed to nullify said marriage after the death of the parties, on the ground of insanity, as is attempted to be done in this suit, and the chancellor was not in

error in so holding." In the case of White v. Williams, 154 Miss. 897, 124 So. 64, in citing and reaffirming Ellis v. Ellis, supra, the opinion further explained why collateral attacks in such cases should not be permitted, saying in part: "It must be admitted that, under the principles laid down in the Ellis case, fraudulent marriages with insane persons may take place, resulting, on the death of the insane, defrauded spouse, in his or her estate being diverted from its rightful course of descent and distribution. On the other hand, if would-be heirs were permitted, after the death of the insane defrauded spouse, to attack the marriage in order to inherit the estate of such deceased spouse, we think the gates of fraud would be opened still wider." However, the opinion hedged against a situation where the insane person was wholly non compos mentis, the marriage was procured solely for the purpose of fraud by the offending party, and there was no sort of consummation. See also White v. Williams, 159 Miss. 732, 132 So. 573. Parkinson v. Mills, 172 Miss. 784, 159 So. 651, is not in conflict with the above-stated principle.

Since the original and amended petitions of the appellants constituted, in all phases, collateral attacks on the dissolution of the marriage of the appellee and Mrs. Ruby Bryant Marrow and the validity of his marriage to the decedent, it follows, from what has been heretofore said, that the trial court was correct in sustaining the demurrers of the appellee. Since the marriage of the appellee to the decedent was not dissolved during her life-time, it could not be dissolved after her death. Consequently the appellants had no right, under the law, to contest the will.

The decree of the trial court is therefore affirmed.

Affirmed.

*Ethridge, Gillespie, McElroy and Rodgers, JJ.,* concur.