# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01613-COA

IN THE MATTER OF THE ESTATE OF JAMES          APPELLANTS
J. CHANEY, JR., DECEASED: LILLIAN HUNT
CHANEY, INDIVIDUALLY AND AS
EXECUTRIX, AND ALICE ANN CHANEY A/K/A
ALICE ANN CHANEY MCCLEOD

v.

JOSEPHINE CHANEY          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/16/2015 |
| TRIAL JUDGE: | HON. MITCHELL M. LUNDY JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | J. WALKER SIMS |
| | FRED M. RIDOLPHI JR. |
| ATTORNEY FOR APPELLEE: | DANIEL OWEN LOFTON |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| TRIAL COURT DISPOSITION: | FOUND LAST WILL AND TESTAMENT OF JAMES J. CHANEY JR. REVOKED BY IMPLICATION; GRANTED MOTION TO TRANSFER REAL PROPERTY OUT OF TESTATE ESTATE IN FAVOR OF APPELLEE |
| DISPOSITION: | AFFIRMED: 05/16/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND GREENLEE, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     This appeal comes from the probate of the estate of James J. Chaney Jr.  During

probate proceedings, a dispute arose as to whether James's last will and testament had been

revoked by a subsequent divorce and property-settlement agreement.  In the dispute, James's

ex-wife and daughter claimed rights to real property located in Tennessee.  James's widow

moved the court to transfer the real property out of the testate estate. The chancellor determined that the will had been revoked by implication and granted the motion for transfer, which led to the real property's distribution under the laws of intestacy. We find no error and affirm.

FACTS AND PROCEDURAL HISTORY

¶2. James executed his last will and testament on June 5, 1962. At that time, he was married to Lillian Hunt Chaney. The will devised farmland, located in Crockett County, Tennessee, to Lillian. James and Lillian had one child, Alice Ann Chaney.

¶3. James and Lillian were divorced on May 5, 1969. They executed a joint property-settlement agreement, and in it, they agreed that Lillian would "relinquish any right or claim to the farm in Crockett [County], Tennessee."

¶4. On December 13, 1971, James married Josephine Chaney. James and Josephine moved from Memphis, Tennessee, to Olive Branch, Mississippi, where they lived until James's death on September 2, 2011. No children were born of this marriage, and James had only one child – Alice.

¶5. On June 22, 2012, Lillian filed a petition to admit James's purported will to probate in the Chancery Court of DeSoto County, Mississippi. Josephine contested the validity of the will and moved to transfer the farmland out of the testate estate. After a hearing on the motion, the chancellor issued an opinion, where he applied the factors of *Rasco v. Estate of Rasco*, 501 So. 2d 421 (Miss. 1987), and found that the will was revoked by implication.

¶6. Lillian and Alice filed a posttrial motion to amend the judgment, to amend findings

2

of fact, and for reconsideration or a new trial. The motion was denied. Lillian and Alice then filed their notice of appeal, and this case was deflected to this Court. This appeal considers two issues – whether the Chancery Court of DeSoto County lacked subject-matter jurisdiction over the real property, and whether the chancellor erred when he ruled the will was revoked by implication.

## STANDARD OF REVIEW

¶7. "Subject matter jurisdiction is a question of law subject to de novo review." *Wiggins v. Perry*, 989 So. 2d 419, 428 (¶1) (Miss. Ct. App. 2008). "In those instances where there is a conflict in the evidence, it is the chancellor's duty, sitting as [the fact-finder], to assess the evidence and determine what weight and worth to give it." *Hinders v. Hinders*, 828 So. 2d 1235, 1244 (¶28) (Miss. 2002) (citation omitted). "So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor's decision, this court may not intercede simply to substitute our collective opinion for that of the chancellor." *Id.* (citing *Bower v. Bower*, 758 So. 2d 405, 412 (¶33) (Miss. 2000)).

## ANALYSIS

### I.     *Subject-Matter Jurisdiction*

¶8.     Lillian and Alice argue that the Chancery Court of DeSoto County lacked subject-matter jurisdiction to grant Josephine's motion to remove the real property, located in Crockett County, Tennessee, from the testate estate. They claim that Mississippi courts have no jurisdiction over the subject matter of a suit where title to land in another state is contested. They also contend that there was an ancillary probate of James's will pending in

3

the Chancery Court of Crockett County, Tennessee. Lillian and Alice urge this Court to vacate the chancellor's order for lack of subject-matter jurisdiction over the Tennessee real property.

¶9. The Mississippi Supreme Court has defined subject-matter jurisdiction as "the power of the court to hear and determine cases in the general class to which the particular case belongs." *In re Will of Case*, 246 Miss. 750, 150 So. 2d 148 (1963). Under Mississippi law, "[t]he chancery court [has] full jurisdiction in . . . testamentary [matters]." Miss. Const. art. 6, § 159(c). Moreover, a chancellor has discretion "to determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings." M.R.C.P. 57(b)(3)(C).

¶10. Lillian invoked the subject-matter jurisdiction of the Chancery Court of DeSoto County when she sought the admission of James's will to probate. It appears that Lillian's ownership interest in the Crockett County, Tennessee property would stand only if the will was accepted into probate, determined to be the valid last will and testament of James, and enforced as such. Otherwise, Lillian has no claim to the Tennessee property.

¶11. At his death, James was a resident of DeSoto County. Lillian offered his will for probate as the last will and testament of a Mississippi resident. There was no issue over James's domicile. We find that the chancellor had jurisdiction over this testamentary matter.

¶12. In addition, Josephine's motion to sever the property from the testate estate was brought before the court as a request for a declaratory judgment. Pursuant to Rule 57 of the Mississippi Rules of Civil Procedure, "[t]he court *may* refuse to render or enter a declaratory judgment where such judgment, if entered, would not terminate the uncertainty or

4

controversy giving rise to the proceeding." M.R.C.P. 57(a) (emphasis added). Here, the chancellor, in his discretion, granted Josephine's motion for a declaratory judgment and rendered a finding that the will was revoked by implication.

¶13. The chancellor's simultaneous grant of a declaratory judgment on the motion and entry of a final judgment, as to the validity of James's will, terminated the controversy surrounding James's estate. After a hearing on the merits, a thorough review of the facts, and an application of the *Rasco* factors, the chancellor issued his opinion that James intended to revoke his predivorce will. The chancellor entered a final judgment based on his opinion. Upon review, we find there was substantial evidence to support the chancellor's decision. This Court cannot find reversible error based on this challenge to the DeSoto County Chancery Court's subject-matter jurisdiction. Therefore, we find subject-matter jurisdiction was proper.

## II. *Revocation of the Will by Implication*

¶14. Lillian and Alice next argue that the chancellor erred when he found that James's will was revoked by implication. They contend the terms of the property-settlement agreement should not be read in conjunction with the will. Further, they argue that Josephine failed to present proof that demonstrated "clear and unequivocal evidence" of James's intent to revoke the will and his prior devise of the farmland to Lillian.

¶15. Under Mississippi law, "[a] devise so made, or any clause thereof, shall not be revocable [except] by the testator . . . destroying, canceling, or obliterating the [will], or causing it to be done in his or her presence, or by subsequent will, codicil, or declaration, in writing . . . ." Miss. Code Ann. § 91-5-3 (Rev. 2013). In *Rasco*, the supreme court

5

recognized that a will may be revoked by various circumstances, not specified within the statute. *Rasco*, 501 So. 2d at 423 (citations omitted). However, the supreme court "declined to adopt a rule of automatic revocation" in instances where a predivorce will and a subsequent property-settlement agreement are in conflict. *Hinders*, 828 So. 2d at 1235 (¶1). Rather, the supreme court held that "a divorce with a property settlement agreement would not operate to impliedly revoke a will unless the settlement evidenced the testator's intent to [revoke the will]." *Rasco*, 501 So. 2d at 423.

¶16.    When presented with this issue, a chancellor should "question . . . whether the testator intended . . . [the] settlement [to] operate as . . . an ademption of a prior-created [will] and release the [former] spouse of all rights [to] the [decedent's] estate." *Id.* Further, "[a]ny document presented as a subsequent declaration must reveal by 'clear and unequivocal' evidence, an intention to revoke the will." *Id.* at 424. In its analysis, the supreme court incorporated the Tennessee Supreme Court's ruling, which provided: "[G]enerally a divorce accompanied by a property settlement agreement[,] which is fully carried out according to its terms[,] should have the effect of revoking a prior will in favor of a former spouse, especially where the parties thereafter 'sever all ties.'" *Id.* (quoting *In re Estate of Perigen*, 653 S.W.2d 717, 720 (Tenn. 1983)).

¶17.    Here, the chancellor applied the factors in *Rasco*. He "look[ed] to the facts and circumstances of [this] particular case, the terms of the [w]ill itself, the divorce decree and the property settlement, and the conduct of the parties," and based his findings accordingly. *Rasco*, 501 So. 2d at 424. The chancellor, as the fact-finder, determined that the express terms of the will and the provisions of the property-settlement agreement were inconsistent.

6

In his will, James declared: (1) that he was married; (2) that his wife's name was Lillian Hunt Chaney; and (3) that he devised to his wife, Lillian Hunt Chaney, all of his estate, both real and personal, which he owned at the time of his death. The chancellor found that James and Lillian divorced and executed a property-settlement agreement at least forty years prior to James's death. By the express terms of the property-settlement agreement, Lillian forfeited her interest in the Crockett County farmland. The chancellor further determined that after the divorce, James and Lillian never resided together as husband and wife, and James remained married to Josephine, until the time of his death.

¶18. Thus, the chancellor's finding that the subsequent property-settlement agreement satisfied the requirements of section 91-5-3, as a "subsequent declaration [to the will] reveal[ed] the clear and unequivocal intention" of James to revoke his predivorce will and divest Lillian of any interest in the farmland. *See* Miss. Code Ann. § 91-5-3.

¶19. The terms of the property-settlement agreement were unambiguous. Lillian, in exchange for consideration, relinquished any interest in the Tennessee farmland. With both James's and Lillian's signatures affixed to the document, James's intention to remain the sole owner of the real property is apparent. Further, the agreement, executed more than forty years before the will's probate, had been in effect without any contention from Lillian and Alice, until after James's death.

¶20. Moreover, James executed his will in 1962 and entered into the property-settlement agreement in 1969, and with nearly four decades between the settlement agreement and his death, he maintained no contact with Lillian. Likewise, after the settlement agreement, Lillian had no further ties to the property. Thus, it is unlikely that James intended for his ex-

wife to inherit property that she agreed to forfeit some forty years prior. The property-settlement agreement speaks for itself, and James's intentions are clear.

¶21. The claim that James failed to satisfy the terms of the property-settlement agreement is not enough to find that the subsequent declaration is not binding. Whether James failed to make child-support payments or maintain insurance for his then minor child has no present effect on the Court's analysis. James's daughter was seven years old when the settlement agreement was executed, and more than thirty years passed between the settlement agreement and the date of James's death. It can still be determined that the parties severed ties many years before this action.

¶22. The chancellor correctly found that the parties intended to settle any and all property rights against each other and that James "acted by implication and intent" to void the previous bequests. *Rasco*, 501 So. 2d at 423. The chancellor viewed the will and the property-settlement agreement "in light of the surrounding circumstances" and found "clear and unequivocal" evidence that James intended to revoke his will. *Hinders*, 828 So. 2d at 1240 (¶15). Here, proof of intent is known based on the reference to the farmland and James's specificity as to Lillian's relinquishment of her interest. In exchange for later claims against the property, James offered consideration, and Lillian agreed. Lillian cannot now renege and revive her interest.

¶23. We find that the chancery court's judgment was supported by substantial evidence. The chancellor did not err in finding that James's will was revoked by implication. We affirm the chancellor's findings.

¶24. **THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS**

8

**AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**